# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>THE BROWN SCHOOLS, INC., *et al.*,<br><br>Debtors. | Chapter 7<br><br>Case No. 05-10841 (MFW) |
| GEORGE L. MILLER, Chapter 7 Trustee of<br>The Brown Schools, Inc.<br><br>Plaintiff,<br><br>v.<br><br>McCOWN DE LEEUW & CO., INC.,<br>KIDS ACQUISITION, LLC,<br>McCOWN DE LEEUW & CO. III, L.P.,<br>MDC MANAGEMENT COMPANY, III, L.P.,<br>MDC MANAGEMENT COMPANY, IIIA, L.P.,<br>McCOWN DE LEEUW & CO. III (EUROPE), L.P.,<br>McCOWN DE LEEUW & CO. III (ASIA), L.P.,<br>GAMMA FUND, LLC,<br>McCOWN DE LEEUW & CO. IV, L.P.,<br>McCOWN DE LEEUW & CO. IV ASSOCIATES, L.P.,<br>DELTA FUND, LLC,<br>MDC MANAGEMENT COMPANY IV, LLC,<br>McCOWN DE LEEUW & CO., LLC,<br>GEORGE McCOWN,<br>ROBERT HELLMAN,<br>ROBERT J. NAPLES, and<br>WINSTEAD SECHREST & MINICK, P.C.<br><br>Defendants. | Adv. Proc. No. 06-50861-MFW |

## DEFENDANTS' JOINT MOTION FOR LEAVE TO APPEAL

The Defendants[1] respectfully submit this joint motion (the "Motion") for leave to appeal, pursuant to 28 U.S.C. §§ 158(a) and Rules 8001, 8002 and 8003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), from the Bankruptcy Court's Order dated and entered on the docket on April 24, 2008 (Adv. Docket No. 107) (the "Order"), issued in conjunction with the Bankruptcy Court's Memorandum Opinion on the Defendants' motions to dismiss [Adv. Docket No. 106] (the "Opinion").[2] The Defendants' motions to dismiss sought dismissal of the Second Amended Complaint ("Second Complaint") filed by George L. Miller, Chapter 7 Trustee ("Trustee") for the debtors The Brown Schools, Inc. and its subsidiaries (collectively, "TBS"). The Order granted in part and denied in part the *MDC Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, In Part, Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Winstead's Motion to Dismiss the Second Amended Complaint,* and *Defendant Robert J Naples' (I) Motion to Dismiss Second Amended Complaint, (II) Joinder in the MDC Defendants' Motion to Dismiss Second Amended Complaint, in Part, and (III) Joinder in Winstead's Motion to Dismiss Second Amended Complaint* (the "Motions to Dismiss").

## I.
## INTRODUCTION

1.      Defendants request leave to appeal from the Bankruptcy Court's Order denying in part the Motions to Dismiss to permit this Court to review two controlling questions of law

---

[1]     Defendants McCown De Leeuw & Co., Inc., Kids Acquisition, LLC, McCown De Leeuw & Co. III, L.P., MDC Management Company, III, L.P. MDC Management Company, IIIA, L.P., McCown De Leeuw & Co. III (Europe), L.P., McCown De Leeuw & Co. III (Asia), L.P., Gamma Fund LLC, McCown De Leeuw & Co. IV, L.P., McCown De Leeuw & Co. IV Associates, L.P., Delta Fund, MDC Management Company IV, LLC, McCown De Leeuw & Co., LLC, George McCown, and Robert Hellman are collectively the "MDC Defendants" and, together with defendants Robert J. Naples and Winstead, Sechrest & Minick, P.C., are the "Defendants."

[2]     A copy of the Order is attached hereto as **Exhibit A**, and a copy of the Opinion is attached hereto as **Exhibit B**. Hereinafter, the Order and Opinion shall collectively be referred to as the "Order."

which, if decided in favor of the Defendants, would lead to the immediate dismissal of the four main causes of action in the Second Complaint. The controlling questions of law involve (1) whether TBS could, as a matter of law, suffer any legally cognizable injury or damage given the Trustee's allegations that TBS had no prospect of surviving and continuing as a going concern and its liquidation was inevitable, and (2) whether damages the Trustee seeks based on deepening insolvency are valid for any cause of action under Delaware and Third Circuit law.

2.     On the first controlling question, the Bankruptcy Court denied the Motions to Dismiss because it mistakenly treated the critical issue of the lack of harm or damage to TBS as merely a standing issue. On the second controlling question, the Bankruptcy Court erroneously failed to follow recent Third Circuit authority, correctly applied by two other bankruptcy courts in Delaware, to bar any damages for deepening insolvency, which are likewise central to the Trustee's Second Complaint. Because substantial grounds for difference of opinion exist on both of these controlling legal questions, an immediate appeal will materially advance the ultimate termination of this adversary proceeding.

## II.
## JURISDICTION AND VENUE

3.     This adversary proceeding arises out of and is related to the above-captioned chapter 7 cases pending before the Bankruptcy Court. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §§ 157, 158(d)(2) and 1334. A portion of this adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

4.     The Defendants are entitled to the relief requested by the Application pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rules 8001, 8002 and 8003.

# III.
# STATEMENT OF FACTS

5.      The Trustee filed his original complaint on or about September 26, 2006, and an amended complaint on or about October 3, 2006 (the "First Complaint"), seeking to recover in excess of $20 million from the Defendants on deepening insolvency, breach of fiduciary duty, and various other legal theories. On November 27, 2006, the Defendants moved to dismiss the First Complaint. On June 5, 2007, the Bankruptcy Court issued an opinion and order granting in part and denying in part the Defendants' motions to dismiss the First Complaint.

6.      On July 19, 2007, the Trustee filed his Second Complaint, again alleging causes of action for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraudulent and/or voidable transfers, corporate waste, deepening of the insolvency, civil conspiracy, and declaratory relief.  The Second Complaint is built around allegations of delayed liquidation, deepened insolvency, and damages for both:

- "Plaintiff, George L. Miller, Chapter 7 Trustee of the Debtors, brings this action to recover more than $20 million for the damages suffered when the Defendants, in breach of their fiduciary duties to an insolvent TBS and its creditors, *wrongfully perpetuated TBS and deepened its insolvency* in order to make fraudulent and voidable transfers to themselves." (2nd Cmplt., ¶1; emphasis added);

- "Instead, MDC decided to *wrongfully prolong and perpetuate the existence of TBS* so that it could profit from the continuation and liquidate the companies outside the scrutiny of a bankruptcy proceeding in a manner that would unlawfully prefer and enrich MDC at the expense of TBS and its existing and future creditors." (Id., ¶44; emphasis added);

- In his allegations against Winstead, the Trustee claims that that the firm acted "*to perpetuate TBS's existence* so that MDC could obtain a priority over other TBS creditors and the Law Firm Defendant could collect substantial fees on a variety of corporate and litigation matters – notwithstanding that the interest of McCown and MDC and *the continued perpetuation of TBS were contrary to the interests of TBS and its non-insider creditors.*" (Id.,¶57; emphasis added);

- Although the Trustee contends that the Second Complaint seeks recovery of $18 million later paid to Teachers Insurance and Annuity Association of America

("TIAA") during the Chapter 7 case, deepening insolvency provides the only actual measure of damage alleged in the Second Complaint: "During the period that Defendants *wrongfully perpetuated* TBS's operations and existence, the *insolvency of TBS increased by more than $22 million*." (Id., ¶65; emphasis added) The First Claim for breach of fiduciary duty alleges no new damages but instead states, "As a result of the Defendants' breach of their fiduciary duties, TBS suffered *the damages previously alleged*." (Id., ¶71; emphasis added);

- In attempting to attack the July 2004 debt restructuring, discussed below, the Trustee alleges: "In exchange for the July 2004 lien transfer to MDC, TBS received debt restructuring which only allowed defendants to *deepen TBS's insolvency* and to prefer themselves at the expense of TBS's creditors." (Id., ¶79; emphasis added);

- The Fifth Claim, which overtly was for "Deepening of the Insolvency," repeats the core allegations relies upon for the breach of fiduciary duty and aiding and abetting claims: "TBS was continued by each and every Defendant, as part of, <u>inter alia</u>, an unlawful and concerted effort to liquidate the property of TBS outside the scrutiny of a bankruptcy proceeding so that MDC could prefer and enrich itself at the expense of TBS and its creditors. The conduct of the Defendants, as aforesaid, *caused a deepening of the TBS [sic] by an amount in excess of $22 million*." (Id., ¶¶92-93; emphasis added); and

- At the conclusion of the Second Complaint, the relief sought is this exact same $22 million of purported deepened insolvency. The Trustee therefore seeks "entry of judgment in favor of the Plaintiff and against the Defendants, jointly and severally, for *an amount in excess of $22 million*, plus interest." (Id., VI., item (i) at p. 24; emphasis added).

7.      As mentioned above, part of the Second Complaint's allegations of a wrongful delay in TBS's liquidation center on a restructuring of certain of TBS's debt. This restructuring, however, occurred approximately ten months after the Trustee alleges that TBS's liquidation had already become inevitable. In July 2004, TBS restructured approximately $20 million of debt it owed to TIAA into four tranches, granting TIAA a first lien on substantially all of its assets. At the same time, TBS also restructured another approximately $20 million in debt owed to certain MDC entities, granting those MDC entities a second lien in TBS's assets. The Second Complaint alleges that TIAA and the MDC entities entered into an Intercreditor Agreement pursuant to which certain MDC entities obtained a participation of up to $2.9 million in the amounts

received by TIAA on repayment of two of four tranches of debt. The Second Complaint further alleges that after granting TIAA and the MDC entities security interests, TBS liquidated more than $18 million in assets and paid the proceeds to TIAA, which TIAA then shared with MDC based on the participation. The Second Complaint, however, makes no allegation that this second lien had any value or that any MDC Defendant ever received payment from TBS on account of the second lien.

8.     On August 31, 2007, the Defendants moved to dismiss all or substantial portions of the Second Complaint. On April 24, 2008, the Bankruptcy Court issued its Opinion granting in part and denying in part the Defendants' motions to dismiss the Second Complaint.

## IV.

## STATEMENT OF ISSUES ON APPEAL

9.     There are two controlling questions of law on appeal:

- As a matter of law, could TBS, which the Second Complaint unequivocally alleges was in a hopeless condition with no prospect of surviving or continuing as a going concern, and whose liquidation was inevitable, suffer any injury or damage when its liquidation was allegedly wrongfully delayed?

- Is deepening insolvency a valid theory of injury or damages for any cause of action alleged in the Second Complaint?

## V.
## REASONS WHY LEAVE TO APPEAL SHOULD BE GRANTED

**A.     A Substantial Basis Exists For A Difference Of Opinion On Two Controlling Questions Of Law, Each Of Which Would Preclude The Trustee From Recovering Damages As A Matter Of Law And Materially Advance The Termination Of The Litigation.**

10.     An appeal from an interlocutory judgment, order, or decree of the bankruptcy court is commenced by filing a notice of appeal and a motion for leave to appeal pursuant to

Bankruptcy Rule 8003 and 28 U.S.C. 158(a). See Fed.R.Bankr.P. 8003; 28 U.S.C. § 158(a). An interlocutory order may be appealed when "1) the order from which the appeal is taken involves a controlling question of law; 2) there is substantial ground for difference of opinion as to the controlling question of law; and 3) an immediate appeal may materially advance the ultimate termination of the litigation." In re Marvel Entertainment Group, Inc., 209 B.R. 832, 837 (D. Del. 1997).

## 1.    **Controlling Questions of Law**

**11.**    The Defendants seek to appeal two critical and controlling questions of law, both of which should be reversed on appeal. "[A] controlling question of law at the very least encompasses a ruling which, if erroneous, would be reversible error on appeal." Id., citing Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir.), cert. den., 419 U.S. 885 (1974); see also IBI Sec. Service, Inc. v. National Westminster Bank USA (In re IBI Sec. Service), 174 B.R. 664, 670 (E.D.N.Y. 1994) (appeal from an order implicates a controlling question of law if either reversal of the order would terminate the action or determination of the issue on appeal would materially affect the outcome of the litigation). In addition, questions of law can be considered "controlling" if they are "[s]erious to the conduct of the litigation, either practically or legally." See Katz v. Carte Blanche Corp., 496 F.2d at 755 (3d Cir. 1974). Similarly, in Capen Wholesale, Inc. v. Michel (In re Capen Wholesale, Inc.), 184 B.R. 547 (N.D. Ill. 1995), the court held that a controlling issue of law need not be outcome determinative; it need only be an "[i]mportant one, which could have significantly affected the bankruptcy proceedings below." Id. at 549.

a.    **TBS, A Company For Which Liquidation Was Inevitable According To The Trustee's Allegations, Suffered No Harm By The Alleged Delay In That Liquidation.**

12.    The first controlling question of law is whether TBS, a corporation whose liquidation was inevitable according to the Second Complaint, could suffer any legally cognizable injury or damage as a result of a delay in that liquidation, alleged deepened insolvency, or the payment to TIAA or other creditors.  This question of law is controlling because to prevail on his causes of action for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, or civil conspiracy – the primary causes of action in the Second Complaint – the Trustee must establish legally cognizable injury or damage to TBS. However, the Trustee's own allegations that TBS's liquidation was inevitable as of a date *long before* the alleged wrongful acts by the Defendants means, as a matter of law, that TBS could not have suffered any injury or damage.

13.    The Trustee's Second Complaint alleges that, as of April 2003, a date prior to the conduct alleged in the Second Complaint as the basis for the Trustee's causes of action, TBS's condition was "hopeless" and TBS "had no prospect of surviving and continuing as a going concern."  With its liquidation inevitable, as a matter of law TBS suffered no legally cognizable injury or damages by virtue of the delay in its liquidation, any supposed deepened insolvency, or by transfers or payments TBS thereafter made to its creditors, including to TIAA following the July 2004 restructuring.

14.    In their Motions to Dismiss, the Defendants cited to In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 576 (S.D.N.Y. 2007).  In that case, the U.S. District Court for the Southern District of New York had before it, on pleading stage motions to dismiss, a "wrongfully delayed liquidation" claim like that alleged by the Trustee. The Parmalat court squarely held that a

company for which liquidation is inevitable suffers no harm by a delay in that liquidation, and it granted the motions to dismiss.  Id. at 576. The Parmalat court first described the nature of the plaintiffs' claims, which are essentially identical to the Trustee's claims here:

> Plaintiffs do not claim that defendants' actions ultimately drove the Companies into bankruptcy. Indeed, they allege that the Companies already were insolvent by 1999 and would have filed for bankruptcy even sooner than they did had Parmalat's true financial condition been revealed. Nor do plaintiffs allege that the Companies' incurrence of new debt harmed their business relationships, reputations, or otherwise hindered their operations. *The complaints instead appear to draw on* Lafferty's *final theory of damages-that 'prolonging [the Companies'] life through bad debt ... cause[d] the dissipation of corporate assets.'*

Id. (emphasis added; footnote omitted).

15.    The Parmalat court noted that the plaintiffs, successors to two bankrupt Parmalat subsidiaries, alleged that "innocent decision makers at the two companies would have sought 'an orderly reorganization or liquidation of [the Companies] at a much earlier date, thus preserving assets,' had Parmalat's insolvency been revealed. In other words, plaintiffs claim that the Companies were injured in that they were induced to delay filing for bankruptcy." Id.  The District Court in Parmalat flatly rejected the plaintiffs' dissipation of corporate assets argument:

> Although plaintiffs assume that delayed liquidation and delayed reorganization would have injured the Companies equally, there is a critical difference. If the Companies were insolvent by 1999 and liquidation was inevitable, *then they had nothing to lose simply by continuing to operate, even if that would have meant the continued depletion of their assets.* As one commentator writes:
>
> > In a liquidation, assets will be sold and the proceeds distributed to creditors. [In cases where] liquidation is inevitable…[the harm caused by delayed bankruptcy filing is a] harm to the beneficiaries of that liquidation -- the creditors. The corporation is no more one of them than the deceased is a beneficiary at the reading of his own will. If asset liquidation is the inevitable best case, the corporation is defunct. Delay does not hinder its ability to purchase raw material, operate its factories, sell widgets, collect receivables, make payroll, or sponsor the Mite A hockey team. All of those attributes of corporate life are gone, and once again we are adding insult only to death.

> Accordingly, insofar as plaintiffs claim that the Companies were induced to delay in liquidating, they have failed to allege harm to the Companies themselves. And they of course lack standing to recoup damages suffered by others, such as the Companies' creditors."

Id. (emphasis added; footnotes omitted). The District Court therefore granted the defendants'

motions to dismiss the complaint.[3]

16.    The Second Complaint's allegations of inevitable liquidation are nearly identical

to those in Parmalat:

- "At least as early as December 31, 2002, and continuing at all times material hereto thereafter, TBS was insolvent and unable to pay its debts as they became due." (2nd Cmplt., ¶38);

- "As of April 7, 2003, TBS's condition was hopeless and the company had no prospect of surviving and continuing as a going concern." (Id., ¶41);

- "Under the circumstances then existing, good faith, honest governance and the duty of loyalty owed by the Defendants to TBS and its creditors compelled a bankruptcy filing and the orderly liquidation of TBS for the benefit of all creditors." (Id., ¶43); and

- The liquidation of TBS essentially began on April 7, 2003, at which time TBS sold all of its residential treatment centers to an independent third party for $64 million (the 'April 2003 Transaction')." (Id., ¶46)

17.    In its Opinion, the Bankruptcy Court at first acknowledged the Parmalat decision

and correctly described it as holding that "a company for which liquidation is inevitable suffers

no harm by a delay in that liquidation and that the harm caused is harm to the creditors and not

the corporation." Opinion, at p. 19. However, the Bankruptcy Court then erroneously

characterized the Defendants' inevitable liquidation argument about the lack of *injury and*

---

[3] The decision quotes Sabin Willet's influential article, "The Shallows of Deepening Insolvency," 60 Bus. Law. 549, 566 (2005), which the Third Circuit cited with approval in  Seitz v. Detweiler, Hershey & Associates (In re CitX Corp.), 448 F.3d 672, 677, 680 n. 11 (3d Cir. 2006). As its title implies, the article concludes that, even in those situations where liquidation is not inevitable, "none of the 'deepening insolvency' rationales adequately describes an actual harm sustained by the corporation, as distinguished from its creditors." Id. at 572.  When liquidation is alleged to be inevitable, as the Trustee has in the Second Complaint, the corporation unequivocally sustains no actual harm.

*damages* as a challenge to the Trustee's *standing* to bring claims on behalf of TBS. In the Opinion, the Bankruptcy Court held that the Trustee had standing to bring claims and had adequately alleged damage, based on boilerplate allegations of damage to TBS. In the Motions to Dismiss, however, the Defendants expressly acknowledged that the Trustee had standing to bring claims on behalf of TBS and did not claim that the Trustee had failed to make any allegation of damage to TBS. Instead, the Defendants argued that the Trustee could not establish the critical elements of legally cognizable injury or damage to the corporation because of his other allegations that TBS's condition was hopeless and its liquidation was inevitable months before the alleged wrongdoing by the Defendants. See, e.g., *Reply Memorandum of Law in Further Support of MDC Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* (Adv. Docket No. 101), p. 8, ¶17.

18.    By misconstruing the Defendants' arguments first as a standing challenge and then as a lack of boilerplate allegation of damages, the Bankruptcy Court erroneously failed to address the Defendants' compelling argument that the Trustee's own inevitable liquidation allegations mean that TBS could not have been injured or suffered damage, as a matter of law, as a result of any wrongdoing alleged in the Second Complaint. Resolution of this controlling legal question on appeal now will materially advance the ultimate dismissal of the Trustee's claims, which rely on this allegedly wrongful delay in TBS's liquidation.

> **b.    Deepening Insolvency Is Not A Valid Theory Of Injury Or Damages Under Delaware And Third Circuit Law.**

19.    The second controlling question of law is whether deepening insolvency can be a valid theory of injury or damages for any cause of action in light of the Third Circuit's decision in Seitz v. Detweiler, Hershey & Associates (In re CitX Corp.), 448 F.3d 672 (3d Cir. 2006)

("we do not mean to imply that deepening insolvency would be a valid theory of damages for any other cause of action, such as fraud, and <u>Lafferty</u> did not so hold"). This is a critical issue because the Trustee has made deepening insolvency damages a central focus of his breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy causes of action in the Second Complaint.

20.     The <u>CitX</u> decision greatly limited the Third Circuit's prior decision in <u>Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.</u>, 267 F.3d 340 (3d Cir. 2001), which had held that Pennsylvania, unlike Delaware, would recognize a cause of action for deepening insolvency.[4] The two other decisions by bankruptcy courts in the District of Delaware that have addressed the <u>CitX</u> decision, <u>Off'l Comm. of Unsecured Creditors v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.</u>), 353 B.R. 820, 849 (Bankr. D. Del. 2006), and <u>Michael B. Joseph, as Chapter 7 Trustee for Troll Communications, LLC, et al. v. Lincoln E. Frank, et al. (In re Troll Communications, LLC</u>), 2008 WL 901173 (Bankr. D. Del. April 2, 2008), both applied <u>CitX</u> and held that deepening insolvency is not a valid theory of injury or damages for any independent cause of action, including breach of fiduciary duty. Instead of following these Delaware decisions, the Bankruptcy Court below instead chose to follow an out-of-circuit decision from the bankruptcy court in the District of Columbia in <u>Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp. I</u>), 353 B.R. 324 (Bankr. D.C. 2006). The <u>Tuft</u> court acknowledged that the <u>CitX</u> decision gave it "serious pause" but, noting that it was not bound by the Third Circuit's decision, instead held that deepening insolvency would be a viable theory of damages in its jurisdiction "[u]nless and until this court is told differently by a higher court *in its*

---

[4] The Bankruptcy Court correctly dismissed the Trustee's deepening insolvency and aiding and abetting a fraudulent transfer causes of action based on the Delaware Supreme Court's holding that Delaware does not recognize such causes of action. <u>Trenwick America Litigation Trust v. Billet</u>, 931 A.2d 438 (Del. 2007).

*own circuit*." Id. at 336-33 (emphasis added). Rather than applying the non-binding District of Columbia decision in Tuft, the Bankruptcy Court should have followed the Third Circuit's CitX decision and, like Radnor Holdings and Troll Communications, held that deepening insolvency is not a valid theory of injury or damage for any cause of action.

## 2.    **Substantial Grounds for Difference of Opinion Exist**

21.    The discussion above reflects that there are substantial ground for difference of opinion on both of the controlling questions of law for which the Defendants seek leave to appeal, and Defendants respectfully disagree with the Bankruptcy Court's decision on these issues.

22.    The Defendants' inevitable liquidation argument goes directly to the controlling question of whether, as a matter of law, the Trustee can allege any legally cognizable injury or damage to TBS on his breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy claims. The Opinion's characterization of this argument as a standing challenge was in error.  The Parmalat decision supports the Defendants' position and demonstrates that a substantial ground for difference of opinion exists on the question of whether a corporation whose liquidation is inevitable suffers any injury or damages, as a matter of law, resulting from a delay in its liquidation and consequent depletion of its assets.

23.    The Defendants further disagree with the Bankruptcy Court's conclusion that deepening insolvency damages are a valid theory of damages for causes of action in the Second Complaint. The Third Circuit's decision in Seitz v. Detweiler, Hershey & Associates (In re CitX Corp.), 448 F.3d 672 (3d Cir. 2006), together with the Delaware bankruptcy court decisions in Off'l Comm. of Unsecured Creditors v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.), 353 B.R. 820, 849 (Bankr. D. Del. 2006), and Michael B. Joseph, as

Chapter 7 Trustee for Troll Communications, LLC, et al. v. Lincoln E. Frank, et al. (In re Troll Communications, LLC), 2008 WL 901173 (Bankr. D. Del. April 2, 2008), demonstrate that a substantial ground for difference of opinion exists on this second controlling question of law. The Bankruptcy Court's reliance on a decision from an out-of-circuit bankruptcy court, which acknowledged it was not bound by the Third Circuit's CitX decision, further supports the existence of a substantial ground for difference of opinion on this controlling legal issue.

### 3.    An Appeal Will Materially Advance The Litigation

24.    Deciding these controlling questions of law on appeal at this time will materially advance the ultimate termination of the litigation. These questions go to the core of the Trustee's ability to establish any damages for his claims.  Although the Second Complaint seeks damages "in excess of $22 million," virtually all of those damages are for the allegedly wrongfully prolonged corporate existence of TBS, deepened insolvency, and delayed liquidation, under the breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy causes of action.  A decision by this Court that the Trustee cannot recover damages arising out of the allegedly inevitable but delayed liquidation of TBS, or for deepening insolvency, would lead to the dismissal of the main causes of action.[5]  Accordingly, appellate review of these questions will materially advance the ultimate termination of this litigation as both a legal and practical matter.

---

[5] Such a dismissal would leave only the fraudulent and/or voidable transfer claim, which seeks less than $2.5 million in the aggregate from the MDC Defendants and Winstead, and a declaratory relief claim.

# VI.

## CONCLUSION

25.    For the foregoing reasons, Defendants respectfully request that this Court grant

leave to appeal from the Bankruptcy Court's Order.


Dated:  May 5, 2008                  ASHBY & GEDDES, P.A.
        Wilmington, Delaware

                                     _____
                                     William P. Bowden (I.D. #2553)
                                     Amanda M. Winfree (I.D. #4615)
                                     Karen B. Skomorucha (I.D. #4759)
                                     500 Delaware Avenue, 8th Floor
                                     P.O. Box 1150
                                     Wilmington, DE  19899
                                     Telephone:  (302) 654-1888
                                     Facsimile:  (302) 654-2067

                                     -and-

                                     COOLEY GODWARD KRONISH LLP
                                     Robert L. Eisenbach III
                                     Steve Friedlander
                                     101 California Street, 5th Floor
                                     San Francisco, CA  94111-5800

                                     -and-

                                     Ronald R. Sussman
                                     Jeffrey L. Cohen
                                     1114 Avenue of the Americas
                                     New York, NY  10036

                                     *Counsel for the MDC Defendants*

BLANK ROME LLP

*Michael DeBaecke*

Thomas P. Preston (I.D. #2548)
Michael D. DeBaecke (I.D. #3186)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6412
Facsimile: (302) 428-5107

-and-

Ian M. Comisky
One Logan Square
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555

*Counsel for Robert J. Naples*


RICHARDS, LAYTON & FINGER, P.A.

_____

John H. Knight (I.D. #3848)
Chun I. Jang (I.D. #4790)
920 North King Street
One Rodney Square
Wilmington, DE 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

BAKER BOTTS L.L.P.
Rod Phelan (Texas I.D. #15899800)
David Genender (Texas I.D. #00790757)
Thomas E. O'Brien (Texas I.D. #24046543)
2001 Ross Avenue, Suite 600
Dallas, TX 75201-2980
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

*Counsel for Winstead Sechrest & Minick, P.C.*

BLANK ROME LLP


Thomas P. Preston (I.D. #2548)
Michael D. DeBaecke (I.D. #3186)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6412
Facsimile: (302) 428-5107

-and-

Ian M. Comisky
One Logan Square
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555

*Counsel for Robert J. Naples*


RICHARDS, LAYTON & FINGER, P.A.

John H. Knight (I.D. #3848)
Chun I. Jang (I.D. #4790)
920 North King Street
One Rodney Square
Wilmington, DE 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

BAKER BOTTS L.L.P.
Rod Phelan (Texas I.D. #15899800)
David Genender (Texas I.D. #00790757)
Thomas E. O'Brien (Texas I.D. #24046543)
2001 Ross Avenue, Suite 600
Dallas, TX 75201-2980
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

*Counsel for Winstead Sechrest & Minick, P.C.*

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) Chapter 7 |
| | ) |
| THE BROWN SCHOOLS, et al., | ) Case No. 05-10841 |
| | ) |
| Debtors. | ) |
| | ) |
| ———————————————————— | ) |
| | ) |
| GEORGE L. MILLER, Chapter 7 | ) Adversary No. 06-50861 (MFW) |
| Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| McCOWN DE LEEUW & CO., INC.; | ) |
| KIDS ACQUISITION, LLC; McCOWN | ) |
| DE LEEUW & CO. III, L.P.; MDC | ) |
| MANAGEMENT COMPANY, III, L.P.; | ) |
| MDC MANAGEMENT COMPANY, IIIA, | ) |
| L.P.; McCOWN DE LEEUW & CO. III | ) |
| (EUROPE), L.P.; McCOWN DE LEEUW | ) |
| & CO. III (ASIA), L.P.; GAMMA | ) |
| FUND LLC, McCOWN DE LEEUW & CO. | ) |
| IV, L.P.; McCOWN DE LEEUW & CO. | ) |
| IV ASSOCIATES, L.P.; DELTA FUND | ) |
| LLC; MDC MANAGEMENT COMPANY IV, | ) |
| LLC; McCOWN DE LEEUW & CO., | ) |
| LLC; GEORGE McCOWN; ROBERT | ) |
| HELLMAN; ROBERT J. NAPLES; and, | ) |
| WINSTEAD SECHREST & MINICK, | ) |
| P.C., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

**AND NOW** this **24th** day of **APRIL, 2008**, upon consideration of
the Defendants' Motions to Dismiss the Second Amended Complaint
and the responses thereto by the Trustee and for the reasons
stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that the Fifth Claim of the Second Amended Complaint (Deepening Insolvency) is **DISMISSED WITH PREJUDICE** as to all Defendants; and it is further

ORDERED that the aiding and abetting a fraudulent conveyance contained within the Third Claim of the Second Amended Complaint is **DISMISSED WITH PREJUDICE** as to all Defendants; and it is further

ORDERED that the constructive fraud claims contained within the Third Claim of the Second Amended Complaint with respect to the April 2003 Sales Transaction are **DISMISSED** with respect to Naples and all MDC Defendants except MDC-3 and MDC-4; and it is further

ORDERED that the constructive fraud claims contained within the Third Claim of the Second Amended Complaint with respect to the July 2004 Restructuring are **DISMISSED** with respect to Naples and all MDC Defendants except MDC-2, MDC-5, MDC-6, MDC-7, MDC-8, MDC-9, and MDC-10; and it is further

ORDERED that in all other respects the Motions to Dismiss are **DENIED**.

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc: Steven M. Coren, Esquire[1]

---

[1]  Counsel is to distribute a copy of this Order and the accompanying Memorandum Opinion on all interested parties and file a Certificate of Service with the Court.

SERVICE LIST

Steven M. Coren, Esquire
Larry H. Spector, Esquire
John W. Morris, Esquire
Kaufman, Coren, & Ress, P.C.
1717 Arch Street
Suite 3710
Philadelphia, PA 19103
Counsel for the Trustee

John T. Carroll, III, Esquire
Cozen O'Connor
1201 North Market Street
Suite 1400
Wilmington, DE 19801
Counsel for the Trustee

Robert L. Eisenbach III, Esquire
Steve Friedlander, Esquire
Curtis Renoe, Esquire
Cooley Godward Kronish LLP
101 California Street, 5th Floor
San Francisco, California 94111-5800
Counsel for the MDC Defendants

Ronald Sussman, Esquire
Jeffrey L. Cohen, Esquire
Melissa S. Harrison, Esquire
Cooley Godward Kronish LLP
1114 Avenue of the Americas
New York, New York 10036
Counsel for the MDC Defendants

William Bowden, Esquire
Ricardo Palacio, Esquire
Ashby & Geddes, LLP
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Counsel for the MDC Defendants

John K. Knight, Esquire
Richards, Layton & Finger P.A.
920 North King Street
One Rodney Square
Wilmington, Delaware 19801-3300
Counsel for Winstead, Sechrest & Minick, P.C.

Rod Phelan, Esquire
David Genender, Esquire
Thomas O'Brien, Esquire
Baker Botts LLP
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
Counsel for Winstead, Sechrest & Minick, P.C.

Thomas P. Preston, Esquire
Michael D. Debaecke, Esquire
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Counsel for Robert J. Naples

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE BROWN SCHOOLS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 05-10841 (MFW) |
| GEORGE L. MILLER, Chapter 7 Trustee<br>of The Brown Schools, Inc.<br><br>Plaintiff,<br><br>v.<br><br>McCOWN DE LEEUW & CO., INC.,<br>KIDS ACQUISITION, LLC,<br>McCOWN DE LEEUW & CO. III, L.P.,<br>MDC MANAGEMENT COMPANY, III, L.P.,<br>MDC MANAGEMENT COMPANY, IIIA, L.P.,<br>McCOWN DE LEEUW & CO. III (EUROPE), L.P.,<br>McCOWN DE LEEUW & CO. III (ASIA), L.P.,<br>GAMMA FUND LLC,<br>McCOWN DE LEEUW & CO. IV, L.P.,<br>McCOWN DE LEEUW & CO. IV ASSOCIATES,<br>L.P.,<br>DELTA FUND LLC,<br>MDC MANAGEMENT COMPANY IV, LLC,<br>MCCOWN DE LEEUW & CO., LLC,<br>GEORGE McCOWN,<br>ROBERT HELLMAN,<br>ROBERT J. NAPLES, and<br>WINSTEAD SECHREST & MINICK, P.C.,<br><br>Defendants. | Adversary No. 06-50861<br><br>Related Doc. No. 106, 107<br><br>**CERTIFICATION OF<br>SERVICE** |

---

[1]    The Brown Schools, Inc. ("TBSI"), The Brown Schools Management Corporation, The Brown Schools Education Corporation, CEDU Education, Inc. f/k/a CEDU Family of Services, Inc., CEDU School, Inc., North American Boarding Schools, Inc., Rocky Mountain Academy, Inc., Northwest Academy, Inc., The Brown Schools of Florida, Inc., The Brown Schools of Puerto Rico, Inc., CEDU Holdings, Inc., CEDU Business Corporation, Austin TBS, Inc., The Brown Schools Business Corp., Healthcare Living Centers, Inc., Healthcare Rehabilitation Center of Austin, Inc, The Brown Schools Behavioral Health System, Inc., Travis TBS, Inc., The Brown School of San Juan, Inc., Healthcare AHGI, Inc., Elmwood Management Company, Inc., Glenwood Management Company, Inc., TBS Holdings, Inc., and TBS Administrative Corp. (collectively, the "Debtors").

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 7 |
| | ) |
| THE BROWN SCHOOLS, et al., | ) Case No. 05-10841 |
| | ) |
| Debtors. | ) |
| | ) |
| ——————————————— | ) |
| | ) |
| GEORGE L. MILLER, Chapter 7 | ) Adversary No. 06-50861 (MFW) |
| Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| McCOWN DE LEEUW & CO., INC.; | ) |
| KIDS ACQUISITION, LLC; McCOWN | ) |
| DE LEEUW & CO. III, L.P.; MDC | ) |
| MANAGEMENT COMPANY, III, L.P.; | ) |
| MDC MANAGEMENT COMPANY, IIIA, | ) |
| L.P.; McCOWN DE LEEUW & CO. III | ) |
| (EUROPE), L.P.; McCOWN DE LEEUW | ) |
| & CO. III (ASIA), L.P.; GAMMA | ) |
| FUND LLC, McCOWN DE LEEUW & CO. | ) |
| IV, L.P.; McCOWN DE LEEUW & CO. | ) |
| IV ASSOCIATES, L.P.; DELTA FUND | ) |
| LLC; MDC MANAGEMENT COMPANY IV, | ) |
| LLC; McCOWN DE LEEUW & CO., | ) |
| LLC; GEORGE McCOWN; ROBERT | ) |
| HELLMAN; ROBERT J. NAPLES; and, | ) |
| WINSTEAD SECHREST & MINICK, | ) |
| P.C., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**[1]

_____

[1] In this Opinion, the Court makes no findings of fact and
conclusions of law pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure. Fed. R. Bankr. P. 7052 (applying Fed. R.
Civ. P. 52 (a) which provides that "[f]indings of fact and
conclusions of law are unnecessary on decisions of motions under
Rules 12 . . . ."). The facts recited are those alleged in the
Complaint.

Before the Court are the motions of the MDC Defendants,[2] Winstead Sechrest & Minick, P.C. ("Winstead"), and Robert J. Naples ("Naples") for dismissal of the Second Amended Complaint filed against them by the Trustee.  For the reasons stated below, the Court will grant the motions in part.

I.    FACTS

In 1997 and 1998, Defendant McCown De Leeuw & Co., Inc. ("MDC"), through its affiliate Kids Acquisition, acquired more than 65% of the stock of The Brown Schools, Inc.[3] (the "Parent Debtor") for $63 million.  In addition, MDC, through two of its affiliates, entered into an Advisory Services Agreement (the

---

[2]  The MDC Defendants are collectively McCown De Leeuw & Co., Inc. ("MDC") and the following of its affiliates: Kids Acquisition, LLC, McCown De Leeuw & Co., III, L.P., MDC Management Company III, L.P., MDC Management Company IIIA, L.P., McCown De Leeuw & Co. III (Europe), L.P., McCown De Leeuw & Co. III (Asia), L.P., Gamma Fund LLC; McCown De Leeuw & Co. IV, L.P., McCown De Leeuw & Co. IV Associates, L.P., Delta Fund, LLC, MDC Management IV, LLC, McCown De Leeuw & Co., LLC, George McCown, and Robert Hellman.  George McCown is the founder of MDC and was a director of The Brown Schools, Inc.  Robert Hellman was the CEO of MDC and a director of The Brown Schools, Inc.

[3]  The Parent Debtor owns the following subsidiaries: The Brown Schools Management Corporation, The Brown Schools Education Corporation, CEDU Education, Inc f/k/a CEDU Family of Services, Inc. CEDU School, Inc., North American Academy, Inc., The Brown Schools of Florida, Inc., The Brown Schools of Puerto Rico, Inc., CEDU Holdings, Inc., CEDU Business Corporation, Austin TBS, Inc., The Brown Schools Business Corp., Healthcare Living Centers, Inc., Healthcare Rehabilitation Center of Austin, Inc., The Brown Schools Behavioral Health System, Inc., Travis TBS, Inc., The Brown School of San Juan, Inc., Healthcare AHGI, Inc., Elmwood Management Company, Inc., Glenwood Management Company, Inc., TBS Holdings, Inc., and TBS Administrative Corp. (collectively, the "Debtors").

"ASA") with the Debtors to provide financial, advisory, and consulting services. Pursuant to the ASA, MDC was to receive the greater of $400,000 or 0.3% of the Debtors' net revenues (capped at $800,000) as compensation for its services. As part of this recapitalization, the Debtors also obtained loans and lines of credit totaling $100 million from various banks, including Credit Suisse First Boston (collectively "CSFB"). CSFB was granted a security interest in substantially all of the Debtors' assets.

In October 1999, the Debtors obtained an additional $15 million in working capital from Teachers Insurance and Annuity Association of America ("TIAA") in exchange for notes in the principal amount of $15 million at 18% interest and warrants to purchase 40,000 shares of the Parent Debtor's stock. The TIAA notes were unsecured and subordinated to the CSFB debt.

In 2000, eight of the MDC companies loaned the Debtors $5 million in exchange for notes in the principal amount of $5 million and warrants to purchase 74,000 shares of the Parent Debtor's stock. The notes were unsecured and subordinate to the CSFB and TIAA debt. The notes were issued at an interest rate of 12% payable-in-kind (the "PIK Notes").

Later, in December 2000, upon default of the CSFB debt, the Debtors restructured that debt. The Debtors were required to sell $32 million in assets and to use the proceeds from those sales to reduce the balance of the CSFB debt. At that time, CSFB increased the interest rate on the remaining debt and the Debtors

3

were required to raise an additional $7.5 million in capital through the sale of additional PIK Notes to MDC.

By April 7, 2003, the Debtors owed approximately (i) $47 million on the CSFB debt, (ii) $18.4 million in principal and interest on the TIAA notes, (iii) $12.5 million plus interest on the PIK Notes held by MDC, and (iv) $22 million to other creditors. Further, the Debtors were defendants in over thirty lawsuits.

During April 2003, the Debtors sold all of their residential treatment centers to third parties for a total of $64 million. The proceeds were used to satisfy the CSFB debt in full and to pay $907,000 to the Debtors' financial advisors, $578,000 to counsel, $278,000 to CSFB's legal and financial advisors, and $1.7 million to MDC. The Trustee alleges that this "payment was merely a vehicle to unlawfully prefer MDC over the Debtors' other creditors since MDC provided no compensable services in connection with the April 2003 transactions beyond those for which it was already being paid under the [ASA]." (Second Am. Compl. ¶ 48.)

In May 2003, the Debtors hired the Winstead law firm at the direction of MDC. In July 2004, the Debtors restructured their debt again (the "July 2004 Restructuring"). As part of the July 2004 Restructuring, TIAA received a first lien and MDC received a second lien on substantially all of the Debtors' assets. TIAA agreed to waive all defaults on the TIAA notes which were

4

restructured into four tranches in the aggregate amount of $20.95 million.  The Debtors agreed to sell $7 million in assets to reduce the TIAA debt.  Subsequently, TIAA and MDC entered into an Intercreditor Agreement.  Under the Intercreditor Agreement, MDC was entitled to receive up to $2.9 million from the monies thereafter received by TIAA.  After granting TIAA and MDC security interests, the Debtors liquidated more than $18 million in assets and paid the proceeds to TIAA, which TIAA then shared with MDC.

On March 25, 2005, the Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code.  George L. Miller was appointed trustee (the "Trustee").


II.  PROCEDURAL HISTORY

On September 26, 2006, the Trustee filed a Complaint against the MDC Defendants, Naples (an MDC employee and former director of the Parent Debtor), and Winstead.  On October 3, 2006, the Complaint was amended.  The Complaint contained counts against all Defendants for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraudulent and/or voidable transfers, deepening insolvency, civil conspiracy, and declaratory relief. There was a separate count for corporate waste against the MDC Defendants and Naples.

On November 27, 2006, the MDC Defendants and Winstead filed motions to dismiss the Complaint.  On December 1, 2006, Naples

filed a motion to dismiss and a joinder in the other motions. The Trustee opposed the motions.

On June 5, 2007, the Court issued an Opinion (the "June 2007 Opinion") which: (i) denied the MDC Defendants' and Naples' motions to dismiss on standing grounds; (ii) denied the motions to dismiss the breach of fiduciary duty and aiding and abetting claims (Counts I and II); (iii) granted the motions and dismissed without leave to replead the Trustee's fraudulent transfer claim against the MDC Defendants for recovery of the $18 million paid to TIAA; (iv) granted the motions and dismissed with leave to replead the Trustee's claims for actual and constructive fraud for recovery of the $1.7 million payment made to certain MDC Defendants for advisory fees; (v) denied the motion to dismiss the preferential transfer claim against the MDC Defendants, but granted the motion and dismissed the same count as to the individual Defendants (McCown, Hellman, and Naples); (vi) denied the motion to dismiss the corporate waste claim against the MDC Defendants and Naples; (vii) deferred ruling on the motion to dismiss the aiding and abetting fraudulent transfers and deepening insolvency claims pending a decision by the Delaware Supreme Court clarifying Delaware state law; (viii) granted the motion to dismiss the civil conspiracy and aiding and abetting civil conspiracy claims against the MDC Defendants, Naples, and Winstead, but granted the Trustee leave to amend his complaint to state civil conspiracy with sufficient specificity; (ix) denied

6

the motion to dismiss the claims against the MDC Defendants and
Naples for equitable subordination; and (x) denied the motion to
dismiss the punitive damage claim against the MDC Defendants and
Naples.

The Court addressed Winstead's motion to dismiss as follows:
(i) denied the motion to dismiss the breach of fiduciary duty
count; (ii) granted the motion to dismiss the aiding and abetting
a breach of fiduciary duty count, the fraudulent transfer claim,
and the civil conspiracy count, but granted the Trustee leave to
amend; (iii) granted the motion to dismiss the declaratory relief
claim; and (iv) delayed a decision on whether to dismiss the
deepening insolvency count to allow the Delaware Supreme Court to
clarify Delaware law on the issue.

The Trustee filed a Second Amended Complaint on July 19,
2007.  The Defendants filed motions to dismiss that Complaint
under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil
Procedure, which are made applicable to adversary proceedings by
Rule 7012(b) and 7009 of the Federal Rules of Bankruptcy
Procedure, respectively.  The Trustee again opposed the motions.
The motions have been fully briefed and are ripe for decision.


III. JURISDICTION

The Court has subject matter jurisdiction over this
adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) &
157(b)(1).  The motions to dismiss the Complaint are core matters

pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H), (K), & (O).

IV.   DISCUSSION

    A.    Standard of Review

        1.    Rule 12(b)(6)

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). To succeed under Rule 12(b)(6), the movant must establish "to a certainty that no relief could be granted under any set of facts which could be proved." Morse v. Lower Merion School Dist., 123 F.3d 902, 906 (3d Cir. 1997) (quoting D.P. Enter., Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984)). "In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004). All reasonable inferences are drawn in favor of the plaintiff. Kost, 1 F.3d at 183. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982). See also Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000); In re OODC, LLC, 321 B.R. 128, 134 (Bankr. D. Del. 2005) (holding that "[g]ranting a motion to dismiss is a 'disfavored' practice . . . . ").

2.   Rule 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement must provide the defendant with fair notice of the claim filed against it. See, e.g., Williams v. Potter, 384 F. Supp. 2d 730, 733 (D. Del. 2005) ("Vague and conclusory factual allegations do not provide fair notice to a defendant.") (citing United States v. City of Phila., 644 F.2d 187, 204 (3d Cir. 1980)).

3.   Rule 9(b)

Where a complaint asserts a claim for fraud, however, the standard for pleading is higher. The complaint must set forth facts with sufficient particularity to apprise the defendant of the charges against him so that he may prepare an adequate answer. In re Global Link Telecom Corp., 327 B.R. 711, 718 (Bankr. D. Del. 2005). To provide fair notice, the complainant must go beyond merely parroting statutory language. Id. See also In re Circle Y of Yoakum, Texas, 354 B.R. 349, 356 (Bankr. D. Del. 2006). A bankruptcy trustee, as a third party outsider to the debtor's transactions, is generally afforded greater liberality in pleading fraud. Global Link, 327 B.R. at 717.

B.    MDC Defendants' Motions to Dismiss

1.    Deepening Insolvency Claim

Since the Court's June 2007 Opinion in this case, the Delaware Supreme Court has held that Delaware does not recognize a cause of action for deepening insolvency.  Trenwick Am. Litig. Trust v. Billett, 2007 Del. LEXIS 357, at *1 (Del. 2007), aff'g Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168 (Del. Ch. 2006).  Therefore, the Court will dismiss Count V of the Trustee's Second Amended Complaint, which is based on that theory.

2.    Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Corporate Waste, and Civil Conspiracy Claims

In the Second Amended Complaint, the Trustee asserts a claim for breach of fiduciary duty against the MDC Defendants.  (Second Am. Compl. ¶¶ 69-71.)  The Trustee contends that "MDC used its power as the majority and controlling shareholder of [the Parent Debtor] to cause its representatives to serve on the Board of Directors of [the Debtors] and on the executive committee of that Board."  (Id. at ¶ 26.)  The Trustee further alleges that the conduct of the MDC Defendants constituted self-dealing and a breach of their fiduciary duties resulting in damages to the Debtors.  (Id. at ¶¶ 70, 71.)  The Trustee asserts that MDC wrongfully prolonged the existence of the Debtors so that MDC could profit at the expense of the Debtors and their creditors, in violation of its duties of good faith, honest governance, and

loyalty which required a prompt bankruptcy filing and liquidation
of the Debtors.  As an example, the Trustee points to the April
2003 transaction where the Debtors sold all of their residential
treatment centers for $64 million and paid MDC $1.7 million.  In
addition, the Trustee asserts that MDC effectuated the July 2004
Restructuring in breach of its fiduciary duty to the Debtors'
creditors in order to prefer MDC over non-insider creditors.
Therefore, the Trustee seeks to recover $18 million in damages
caused by the Debtors paying TIAA as part of the restructuring.
The Trustee asserts a claim for aiding and abetting a breach of
fiduciary duty against any of the MDC Defendants that might be
found not to have owed a fiduciary duty to the Debtors at the
time of the transactions.  (<u>Id.</u> at ¶¶ 72-74.)

The Trustee also asserts a claim against the MDC Defendants
for corporate waste.  The Trustee alleges that the payment of
fees to MDC in connection with the April 2003 Transaction and the
granting of security interests in which MDC participated "had no
rational purpose and were so one-sided that no business person of
ordinary sound judgment could believe that the Debtors received
adequate consideration in exchange for the payments and/or
transfers."  (<u>Id.</u> at ¶ 88.)  The Trustee seeks damages for the
full amount paid or transferred to MDC and TIAA as a result of
the waste of the Debtors' assets.  (<u>Id.</u> at ¶ 89.)

The Trustee additionally asserts a claim for civil
conspiracy contending that MDC, acting through the Director

11

Defendants,[4] caused the Debtors to retain Winstead to create a strategy to prefer the interests of MDC over the Debtors' other unsecured creditors in breach of MDC's fiduciary duty to those creditors. (Id. at ¶ 95.) Pursuant to that agreement, the Trustee alleges that Winstead counseled the Debtors to engage in the July 2004 Restructuring to give MDC priority over the claims of the Debtors' other unsecured creditors. (Id.) The Trustee seeks to hold the MDC Defendants liable for damages and harm to the Debtors as a result of the alleged conspiracy. (Id. at ¶ 96.)

        a.    <u>Disguised Deepening Insolvency Claim</u>

        The MDC Defendants argue that the Trustee's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy fail to allege legally cognizable claims or damages. MDC argues these counts of the Trustee's Second Amended Complaint rely on a theory of deepening insolvency for the underlying claims and the measure of damages. The MDC Defendants argue that the recent decision by the Delaware Supreme Court requires dismissal of the Trustee's claims. <u>Trenwick</u>, 2007 Del. LEXIS 357, at *1, <u>aff'g</u> 906 A.2d at 204-07 (holding that Delaware does not recognize an independent

---

[4]    The Director Defendants are defined in the Second Amended Complaint as Naples, Robert Hellman (the CEO of MDC and a director of the Parent Debtor), and George McCown (the founder of MDC and a director of the Parent Debtor). (Second Am. Compl. ¶¶ 21-23.)

cause of action for deepening insolvency).  <u>See also</u> <u>In re Radnor</u>
<u>Holdings Corp.</u>, 353 B.R. 820, 842 (Bankr. D. Del. 2006)
(dismissing causes of action for breach of fiduciary duty and
aiding and abetting breach of fiduciary duty because "simply
calling a discredited deepening insolvency cause of action by
some other name does not make it a claim that passes muster.").

The Trustee concedes that <u>Trenwick</u> warrants dismissal of
Count V, the claim for deepening insolvency, but asserts that it
does not affect the remaining counts of his Second Amended
Complaint.  While the Chancery Court in <u>Trenwick</u> had rejected an
independent cause of action for deepening insolvency, it noted
that the invalidity of that cause of action "does not absolve
directors of insolvent corporations of responsibility.  Rather,
it remits plaintiffs to the contents of their traditional
toolkit, which contains . . . causes of action for breach of
fiduciary duty."  <u>Trenwick</u>, 906 A.2d at 205.

The Trustee differentiates the <u>Trenwick</u> decision from this
case by noting that the complaint in <u>Trenwick</u> did not allege a
breach of fiduciary duty, self-dealing or adequately plead that
the company was insolvent at the time of the questioned
transactions.  The Chancery Court specifically noted that
Delaware law "already requires the directors of an <u>insolvent</u>
corporation to consider, as fiduciaries, the interests of the
corporation's creditors who, by definition, are owed more than
the corporation has the wallet to repay."  <u>Trenwick</u>, 906 A.2d at

13

205 (emphasis added).

The Trustee argues that the MDC Defendants' assertion that his claims are really just disguised claims for deepening insolvency ignores "the critical allegations that [the MDC Defendants] had a fiduciary duty and that they engaged in self-dealing." These facts, the Trustee argues, make his claims more than just a deepening insolvency claim in disguise.

The Court agrees with the Trustee. Trenwick required dismissal of the deepening insolvency claim, but cannot be read so broadly as to require dismissal of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy claims. The Chancery Court clearly acknowledged that plaintiffs could bring traditional claims against defendants under the latter theories. Trenwick, 906 A.2d at 205. Therefore, the Court concludes that Trenwick does not mandate dismissal of the Trustee's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy.

The Court is also not persuaded that the decision in Radnor mandates dismissal of the Trustee's claims. The Radnor Court noted that the plaintiff's complaint against the board only alleged duty of care violations, not duty of loyalty breaches as alleged in this case. Radnor, 353 B.R. at 842. Under Delaware law, a plaintiff asserting a duty of care violation must prove the defendant's conduct was grossly negligent in order to

14

overcome the deferential business judgment rule. <u>Aronson v. Lewis</u>, 473 A.2d 805, 812 (Del. 1984) (holding that gross negligence is the applicable standard of care for director liability under the business judgment rule), <u>overruled on other grounds by</u> <u>Brehm v. Eisner</u>, 746 A.2d 244, 254 (Del. 2000). Defendants are also offered protection under section 102(b)(7) of the Delaware Code which allows the corporation to indemnify its directors from liability for their breaches of the duty of care. 8 Del. C. § 102 (2008). Duty of care violations more closely resemble causes of action for deepening insolvency because the alleged injury in both is the result of the board of directors' poor business decision. To defeat such an action, a defendant need only prove that the process of reaching the final decision was not the result of gross negligence. Therefore, claims alleging a duty of care violation could be viewed as a deepening insolvency claim by another name.

For breach of the duty of loyalty claims, on the other hand, the plaintiff need only prove that the defendant was on both sides of the transaction. <u>Weinberger v. UOP, Inc.</u>, 457 A.2d 701, 710 (Del. 1983) ("When directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain."). The burden then shifts to the defendant to prove that the transaction was entirely fair. <u>Id.</u> This burden is greater than meeting the business judgment rule inherent in

15

duty of care cases.  Further, duty of loyalty breaches are not indemnifiable under the Delaware law.  8 Del. C. § 102(b)(7).

Therefore, the Court concludes that the Trustee's claims for breach of the fiduciary duty of loyalty in the form of self-dealing are not deepening insolvency claims in disguise. Consequently, the <u>Trenwick</u> and <u>Radnor</u> decisions are not controlling.  Accordingly, the Court will deny the MDC Defendants' motion to dismiss the Trustee's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy on this theory.

b.  <u>Damages for Deepening Insolvency</u>

The MDC Defendants contend that deepening insolvency is the only measure of damages used in the Second Amended Complaint with respect to the claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy.[5]  The MDC Defendants argue that deepening insolvency is an "impermissible measure of damages" for a claim of breach of fiduciary duty.  <u>Seitz v. Detweiler, Hershey and Associates, P.C.</u> <u>(In re CitX Corp.)</u>, 448 F.3d 672, 677-78 (3d Cir. 2006) (holding that deepening insolvency is not a viable theory of damages for a

---

[5]  MDC cites Paragraph 65 of the Second Amended Complaint which reads: "During the period that Defendants wrongfully perpetuated [the Debtors'] operations and existence, the insolvency of [the Debtors] increased by more than $22 million." (Second Am. Compl. ¶ 65.)  MDC also cites Paragraph 71 which reads: "As a result of the Defendants' breach of their fiduciary duties, [the Debtors] suffered the damages previously alleged."  (<u>Id.</u> at ¶ 71.)

malpractice claim).  The MDC Defendants argue that this is especially true because deepening insolvency is not a cause of action under Delaware law.

The MDC Defendants further argue that the Trustee's reliance on deepening insolvency as a measure of the alleged harm to the Debtors is flawed because the Trustee has not stated what wrongful conduct was the proximate cause of that damage.  The MDC Defendants argue that because the Court has previously ruled that the Trustee cannot avoid the liens and payments made to TIAA, those liens and payments did not injure the Debtors.  The MDC Defendants further contend that the Trustee does not allege that any payments were made on the junior lien granted to certain MDC Defendants and, therefore, that lien did not cause any injury to the Debtors.  Finally, the MDC Defendants argue that the participation interest that certain MDC Defendants purchased from TIAA did not cause any injury or damage to the Debtors, because it did not matter whether TIAA retained the full payments made by the Debtors or paid some of it to the MDC Defendants.  As a result, the MDC Defendants argue that the Trustee's claims should be dismissed because the Trustee did not plead any actual damages to the Debtors other than deepening insolvency.

In response, the Trustee maintains that the amount he seeks is not exclusively the amount by which the Debtors' insolvency was deepened.  The Trustee acknowledges that the Second Amended Complaint alleges that, while the defendants wrongfully

17

perpetuated the Debtors' existence, "the insolvency increased by more than $22 million." (Second Am. Compl. ¶ 65.) The Trustee argues, however, that he seeks an amount in excess of $22 million in relief, including $18 million in damages for payments made to TIAA and MDC because of MDC's self-dealing and breach of fiduciary duty. (<u>Id.</u> at ¶ 1.) The Trustee argues that in the June 2007 Opinion, the Court acknowledged that the amount paid pursuant to the July 2004 Restructuring constituted damages which may be recovered under the breach of fiduciary duty claim. <u>In re The Brown Schools</u>, 368 B.R. 394, 400 (Bankr. D. Del. 2007).

The Trustee also argues that even if the amount by which the Debtors' insolvency deepened was the only component of damages sought, those damages are recoverable under a breach of fiduciary duty theory and should survive a motion to dismiss. He argues that the Third Circuit's holding in <u>CitX</u> was that the company's deepening insolvency was not a viable theory of damages for the particular claim before that court, a negligence claim for accounting malpractice. 448 F.3d at 672. The Trustee argues that the basis of the <u>CitX</u> Court's decision was that the plaintiff could not prove actual harm and causation, two necessary elements of a malpractice claim. The Trustee argues, however, that the <u>CitX</u> case does not stand for the broad proposition that deepening insolvency cannot be a valid theory of damages for <u>any</u> independent cause of action, especially if those damages were suffered as a result of the breach of fiduciary duty

18

and other claims he alleges.

The Trustee instead urges this Court to follow the decision in a case whose facts more closely resemble those present here. Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp. I), 353 B.R. 324, 333 (Bankr. D.C. 2006). In Tuft, the trustee alleged that the defendant directors breached their fiduciary duties of care and loyalty by allowing the company and its subsidiaries to take on additional debt in a fiscally irresponsible manner and by misusing corporate assets. The Tuft Court, after considering the CitX decision, held that deepening insolvency was a valid theory of damages for the breach of fiduciary duty claim. Tuft, 353 B.R. at 336-37.

The Court agrees with the Trustee and the reasoning of the Tuft Court. Consequently, the Court will deny the MDC Defendants' motion to dismiss these claims on this basis.

c.    Trustee's Standing

The MDC Defendants also argue that the Trustee cannot establish any recoverable damages for deepening insolvency. See, e.g., In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 576 (S.D.N.Y. 2007) (holding that a company for which liquidation is inevitable suffers no harm by a delay in that liquidation and that the harm caused is harm to the creditors and not the corporation). The MDC Defendants argue, therefore, that the Trustee cannot allege any legally cognizable injury or damages to the Debtors.

The Trustee responds that the MDC Defendants are merely recasting the standing argument advanced in their initial motion to dismiss, which was already rejected by this Court in the June 2007 Opinion that held that "[e]ven though the Trustee's claims incidentally implicate creditors' rights, the Trustee has standing to assert the claims of the Debtors." <u>Brown Schools</u>, 368 B.R. at 400.

The Court noted in its previous Opinion that the Trustee properly has standing to bring these claims. (<u>Id.</u>) The Trustee has adequately alleged damage to the Debtors and therefore the Court will not dismiss the Trustee's claims for lack of standing.

### 3.   Fraudulent Transfers

The Trustee's Third Claim against the MDC Defendants is for recovery of fraudulent transfers. (Second Am. Compl. ¶¶ 75-86.) The Trustee alleges, in part, that:

> 76.   The Defendants orchestrated, participated in and/or aided and abetted the granting of security interests in property of the Debtors, and the transfer of money and other property directly or indirectly to or for the benefit of MDC and the Law Firm Defendant, and did so with the actual intent to hinder, delay and/or defraud [the Debtors'] creditors. . . .

(<u>Id.</u> at ¶ 76.) The Trustee asserts that the first fraudulent transfer occurred in April 2003 when the MDC Defendants caused the Debtor to pay a $1.7 million advisory fee to two of the MDC Defendants. The Trustee alleges that this transfer was made even though no advisory services were provided beyond those for which those MDC Defendants were previously compensated. Based upon

their affiliation with these entities, the Trustee alleges the
other MDC Defendants indirectly received the benefit of this
payment.

The second alleged fraudulent transfer involves the July
2004 Restructuring.  The Trustee asserts that the MDC Defendants,
Naples, and Winstead caused the Debtors to grant TIAA a first
lien and MDC a second lien on the Debtors' assets and that MDC
directly benefitted from the $18 million paid to TIAA by
receiving $1.7 million of it and indirectly benefitted by the
improvement in the priority of its second lien.  The Trustee
alleges that in exchange for the second lien given to MDC, the
Debtors received no benefit but only deepened their insolvency.
The Trustee asserts that all of the MDC Defendants directly or
indirectly received the benefit of this allegedly fraudulent
transfer.

       a.   Actual Fraud

         i.   April 2003 Sales Transaction

The MDC Defendants argue that the Trustee's claim for actual
fraud with respect to the April 2003 sales transaction should be
dismissed for failure to state the claim with particularity.  See
Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the
circumstances constituting fraud or mistake shall be stated with
particularity.").  Specifically, MDC argues that the Trustee
merely identified the two MDC Defendants that received the $1.7
million transfer and baldly alleges that the transfer was made

with actual intent to hinder or delay the Debtors' creditors. The MDC Defendants argue that the Trustee fails to allege any facts supporting this averment, and the Second Amended Complaint is, therefore, insufficient. <u>See, e.g.</u>, <u>Global Link</u>, 327 B.R. at 718 ("Fair notice requires something more than a quotation from the statute . . . .") (<u>quoting</u> <u>Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.)</u>, 32 B.R. 199, 204 (Bankr. S.D.N.Y. 1983)). The MDC Defendants contend that the current allegations are identical to those in the First Complaint, which the Court held were insufficient. <u>See</u> <u>Brown Schools</u>, 368 B.R. at 403-04.

The MDC Defendants also argue that the Trustee is merely speculating as to the motive of any MDC Defendants, which fails to satisfy Rule 9(b) as articulated by the <u>Bell Atlantic</u> plausibility test. <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007) (holding that for a claim of relief to be plausible on its face, the facts alleged must be "above the speculative level" and must be more than merely "conceivable"). According to the MDC Defendants, the Trustee failed to provide facts that would support an argument that the MDC defendants made the transfer "with actual intent to hinder, delay or defraud any creditor or debtor." <u>See</u> 6 Del. C. § 1304(a)(1); 11 U.S.C. § 548(a)(1)(A).

The Trustee argues that the basis for the actual intent allegations respecting these transfers is sufficiently pled in revised paragraphs 59 and 75-84 of the Second Amended Complaint

22

(as well as in paragraphs 1 and 50-51). Specifically, the Trustee alleges that the fees received by the MDC Defendants are fraudulent transfers because they were received "during the wrongful perpetuation of the Debtors' existence and/or while the breaches of fiduciary duty and other wrongs were being perpetrated by said Defendants." (Second Am. Compl. ¶ 77.) The Trustee also alleges that in exchange for the fees they paid, the Debtors received nothing beyond the services for which they had already paid others. (Id. at ¶ 76(a).) The Trustee argues that the Second Amended Complaint properly pleads facts by alleging that the intent of the MDC Defendants was to pay themselves cash for nothing which was an attempt to "hinder, delay or defraud" the Debtors' other creditors.

In the June 2007 Opinion, the Court found that one of the deficiencies in the Trustee's pleadings of actual fraud was that "the Trustee does little beyond merely reciting elements of fraud." Brown Schools, 368 B.R. at 403. The Court finds that this deficiency has been corrected in the Second Amended Complaint, as the Trustee has stated facts which if proven would establish actual intent to defraud creditors. Accordingly, the Court will deny the motion to dismiss the Trustee's claim for actual fraudulent transfer against the MDC Defendants with respect to the April 2003 transaction.

ii.  <u>July 2004 Restructuring</u>

The MDC Defendants argue that the Trustee has also failed to state a claim for actual fraud in connection with the July 2004 Restructuring.  The MDC Defendants argue that after this Court held in the June 2007 Opinion that the Trustee's judicial admissions rendered TIAA's lien and the $18 million in payments made thereunder unavoidable, the Trustee in the Second Amended Complaint merely alleged that the second lien granted to the MDC Defendants was effectuated "to prefer MDC over non-insider creditors . . . as a way to deter legitimate claims from being pursued by [the Debtors'] creditors."  (Second Am. Compl. ¶ 59.) They argue that the Trustee has failed to allege any facts to show that the subordinated second lien was granted to MDC with an actual intent to hinder, delay or defraud creditors, rather than simply as part of a restructuring of debt owed to the MDC Defendants, whereby the interest rate was substantially reduced and other concessions were given to the Debtors.

According to the Trustee, the MDC Defendants' argument borders on frivolous because "the act of prioritization itself requires intent."  <u>Tuft</u>, 353 B.R. at 345.  The Trustee further argues that the Supreme Court's holding in <u>Bell Atlantic</u> does not apply.  In <u>Bell Atlantic</u>, the Supreme Court held that a claim under section 1 of the Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and that merely alleging parallel conduct

and a bare assertion of conspiracy will not suffice.  <u>Bell</u>

<u>Atlantic</u>, 127 S. Ct. at 1965.  The Trustee notes that the Supreme

Court emphasized that the <u>Bell Atlantic</u> case was decided in the

context of large costly antitrust litigation and that "a district

court must retain the power to insist upon some specificity in

pleading before allowing a potentially massive factual

controversy to proceed."  <u>Id.</u> at 1967 (<u>citing</u> <u>Associated Gen.</u>

<u>Contractors of Cal., Inc. v. Carpenters</u>, 459 U.S. 519, 528 n.17

(1983)).  The Trustee argues that these factors are not relevant

in this case.

The Court agrees with the Trustee's argument that his

allegations are sufficiently detailed.  The act of seeking a

priority claim may evidence intent to hinder, delay or defraud

other unsecured creditors; the other allegations of the Trustee

about the actions of MDC, if proven, could support a finding of

intent and lend credence to the claim of actual fraud.  (Second

Am. Compl. ¶¶ 57, 59, 76, 79.)  Therefore, the Court will deny

the motion to dismiss the fraudulent transfer claim against the

MDC Defendants with respect to the July 2004 Restructuring.

b.    <u>Constructive Fraud</u>

In the June 2007 Opinion, the Court dismissed, with leave to

amend, the Trustee's claim for constructive fraud because the

Trustee did not allege which transfers were avoidable or the date

of the transfers.  Additionally, the Court noted that the Trustee

did not allege what value was received in exchange for the

transfers or whether Naples, an employee and not a director of

MDC, received any transfers. <u>Brown Schools</u>, 368 B.R. at 404.

        i.   <u>April 2003 Sales Transaction</u>

The MDC Defendants argue that while the Trustee has pleaded

new facts sufficient to state a constructive fraudulent transfer

claim against two MDC Defendants (MDC-3 and MDC-4) who allegedly

received the $1.7 million transfer, he has failed to state a

claim against the other MDC Defendants.  The MDC Defendants argue

that the Trustee's allegations that the other MDC Defendants

received the benefit of that transfer merely because of their

affiliation with MDC-3 and MDC-4 are insufficient.  (Second Am.

Compl. ¶ 76.)  Specifically, the MDC Defendants argue that the

Trustee never alleges that any other MDC Defendants were initial

transferees, immediate transferees, mediate transferees, or

entities for whose benefit the transfer was made, or any

plausible basis to so conclude.  Therefore, MDC contends that the

Trustee cannot state a claim under section 550 of the Bankruptcy

Code and the constructive fraud claim must be dismissed against

the MDC Defendants, other than MDC-3 and MDC-4.

The Trustee responds that the Second Amended Complaint has

alleged the necessary details that the Court found lacking for

the constructive fraud claims against the MDC Defendants in the

initial Complaint.  Specifically, the Trustee alleged in the

Second Amended Complaint that MDC at all times owned and

controlled the other eleven MDC Defendants and that those

Defendants and the Director Defendants were involved in each of the challenged transactions.  The Trustee also alleged that each of the MDC Defendants who were not directly involved in the specific transfers benefitted from each transfer because of their affiliation with the other MDC Defendants.  (Second Am. Compl. ¶ 76(a)(ii).)

The Trustee's argument is based on the premise that MDC created a network of affiliated companies to deal with the Debtors and argues that it is certainly plausible that each one is culpable in some way for each of the fraudulent transfers. The Trustee further emphasizes that at this stage, he is unable to allege anything more with regard to which entity was actually involved in, or benefitted from, which transaction.  The Trustee seeks the opportunity for discovery to gather more information.

Such speculation is not, however, sufficient to state a cause of action.  The Trustee has stated a cause of action against MDC-3 and MDC-4 for constructive fraud by identifying specific transfers that were made to those entities.  However, the Court concludes that the Trustee has failed to plead sufficient facts from which the Court could conclude that any transfers were made to the other MDC Defendants or that they received any benefit from the transfers to MDC-3 and MDC-4. Therefore, the Court will dismiss the claims for constructive fraud against all MDC Defendants except MDC-3 and MDC-4.

27

ii. <u>July 2004 Restructuring</u>

The MDC Defendants argue that the Trustee's claim for avoidance of constructive fraud with respect to the July 2004 restructuring identifies only seven of the fifteen MDC Defendants as being involved. The MDC Defendants argue that the Trustee's blanket allegation that the other eight MDC Defendants "indirectly received the benefit of" that restructuring based strictly on their affiliation is mere conjecture. Again, the MDC Defendants argue that the Trustee has failed to allege that any of the other eight MDC Defendants were initial transferees, immediate transferees, mediate transferees, or entities for whose benefit the transfer was made and, therefore, that the Trustee cannot state a claim under section 550 of the Bankruptcy Code.

The Trustee makes the same argument for the July 2004 Restructuring as he makes for the April 2003 Sales Transaction. He argues that MDC created the complex network of twelve affiliated companies and that, under these circumstances, it is entirely plausible that each one is culpable in some way for each of the fraudulent transfers. The Trustee argues that he should be able to pursue discovery and have this matter revisited as appropriate on a motion for summary judgment.

Again, the Court concludes that the Trustee has failed to plead sufficient facts on this issue to rise above a speculative level. It is insufficient to state a claim for constructive fraud against a party by alleging that the party is an affiliate

of the recipient of the transfer; such a claim ignores the separateness of corporate entities. Thus, the Court will dismiss the claims for constructive fraud against all MDC Defendants except MDC-2, MDC-5, MDC-6, MDC-7, MDC-8, MDC-9 and MDC-10, who are identified as having received the alleged fraudulent transfers.

    4.   <u>Aiding and Abetting Actual or Constructive Fraud</u>

    The MDC Defendants argue that the Trustee's claim for aiding and abetting fraudulent transfers fails and should be dismissed. They contend that the Third Circuit has never recognized a distinct cause of action for aiding and abetting a fraudulent transfer in the corporate context. In fact, the Delaware Courts have held that such a cause of action does not exist. <u>See, e.g.</u>, <u>Trenwick</u>, 906 A.2d at 203 (dismissing claim because "[d]espite the breadth of remedies available under state and federal fraudulent conveyance statutes, those laws have not been interpreted as creating a cause of action for 'aiding and abetting' [a fraudulent conveyance]."), <u>aff'd</u> 2007 Del. LEXIS 357, at *1 . Therefore, the MDC Defendants argue that the Trustee's attempt to assert such a cause of action cannot be permitted.

    The Trustee provided no response to the MDC Defendants' argument on this point. In his Second Amended Complaint, the Trustee makes a blanket assertion that "[a]ny Defendant not liable as a transferee is liable for aiding and abetting the

commission of fraudulent transfers." (Second Am. Compl. ¶ 86.)

Because no such cause of action exists under Delaware law, the Court will dismiss that portion of the Trustee's Third Count that asserts a claim for aiding and abetting fraudulent transfers. Trenwick, 906 A.2d at 203, aff'd 2007 Del. LEXIS 357, at *1.

      C.    Naples' Motion to Dismiss

          1.    Actual and Constructively Fraudulent Transfers

Defendant Naples argues that the claims against him for actual and/or constructive fraud fail because, despite having amended his pleading, the Trustee's allegations continue to be insufficient and lack the particularity required by Rule 9(b). Bell Atlantic, 127 S. Ct. at 1965. Most significantly, Naples argues that the Trustee does not allege that Naples was a transferee of any of the Debtors' property.

Naples notes that section 550(a) of the Bankruptcy Code states from whom a Trustee may recover an avoidable transfer, specifying "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550. Naples contends that the Second Amended Complaint is devoid of any allegations that he was an initial, immediate or mediate transferee, in connection with any of the transactions.

Naples argues that the phrase "entity for whose benefit such transfer is made" has been limited to circumstances where the

transfer was made to (1) a guarantor of a debtor or (2) a debtor
of the initial transferee.  See, e.g., In re Coggin, 30 F.3d
1443, 1453-54 (11th Cir. 1994); Christy v. Alexander & Alexander
of New York, Inc. (In re Finley, Kumble, Wagner, Heine,
Underberg, Manley, Myerson & Casey), 130 F.3d 52, 57 (2d Cir.
1997); In re Columbia Data Prods., Inc., 892 F.2d 26, 28 (4th
Cir. 1989); Bonded Fin. Servs., Inc. v. European Am. Bank, 838
F.2d 890, 895 (7th Cir. 1988).  Naples states that he cannot be a
person "for whose benefit such transfer was made" because nowhere
in the Second Amended Complaint is it alleged that he is a
guarantor or that a debt was paid on his behalf.  Naples argues
that the only allegation the Trustee makes with respect to him is
in paragraph 76 of the Second Amended Complaint, which states
that because of Naples' board membership and/or senior officer
position with the Parent Debtor and/or senior officer position
with MDC, Naples indirectly received the benefit of the transfers
to the other MDC Defendants.  (Second Am. Compl. ¶ 76(a)(iii) &
(b)(iii).)

     The Trustee again argues that Bell Atlantic is inapplicable
to the instant case because it was tailored to large antitrust
litigation that called for heightened specificity in pleading.
The Trustee contends that the Second Amended Complaint adequately
specifies which individual Defendant directly and/or indirectly
received which particular transfer.  The Trustee also argues that
the Second Amended Complaint alleges that Naples, as a director

of the Parent Debtor, was directly involved in each of the challenged transactions. The Trustee further alleges that Naples benefitted from each transfer based on his affiliation with the other MDC Defendants. The Trustee concludes by arguing that, at this stage of the case, he cannot allege anything more without the opportunity for discovery. The Trustee argues that this matter should be revisited as appropriate on a motion for summary judgment and that Naples' motion to dismiss Count III should be denied.

The Court agrees with Naples and concludes that the Trustee has failed to state a claim for any actual or constructive fraud against Naples and will grant the motion to dismiss as to that claim. As noted, the Trustee has not identified any transfer made to Naples. Merely being an employee of a transferee is insufficient, without more, to establish that Naples was the transferee or benefitted from the transfer.

> 2. <u>Aiding and Abetting Fraudulent Transfers</u>

Naples argues that the aiding and abetting fraudulent transfer claims under Count III should be dismissed as to him because Delaware does not recognize a cause of action for aiding and abetting fraudulent transfers. <u>See</u> <u>Trenwick</u>, 906 A.2d at 203, <u>aff'd</u> 2007 Del. LEXIS 357, at *1. The Trustee does not respond to this argument.

For the reasons stated in Part IV.B.4., the Court will grant the motion to dismiss the Trustee's allegations of aiding and abetting fraudulent transfers with respect to Naples.

     3.   <u>Civil Conspiracy and Aiding and Abetting Civil Conspiracy</u>

The Trustee alleges that Naples is liable under a civil conspiracy claim because the MDC Defendants, acting through the Director Defendants including Naples, caused the Debtors to retain Winstead to devise a strategy to prefer the interests of MDC over the Debtors' other unsecured creditors in breach of MDC's fiduciary duty to those creditors. (Second Am. Compl. ¶ 95.) Naples argues that the Trustee failed to allege that Naples made any agreements or committed any unlawful acts in furtherance of the alleged conspiracy.

A claim for civil conspiracy requires allegations of (i) a confederation or combination of two or more persons, (ii) an unlawful act in furtherance of the conspiracy, and (iii) actual damages to the plaintiff. <u>Empire Fin. Servs., Inc. v. Bank of New York (Delaware)</u>, 900 A.2d 92, 97 (Del. 2006). This Court previously held that Naples, an employee and agent of MDC, could not, as a matter of law, conspire with MDC. <u>See</u> <u>Brown Schools</u>, 368 B.R. at 409-10. The Court further found that, because the Trustee did not allege any wrongdoing by TIAA, the Trustee could not allege any conspiracy between TIAA and Naples. <u>Id.</u> Therefore, the only remaining defendant with whom Naples could

have conspired was Winstead.  The Court granted the Trustee leave to further amend the Amended Complaint.

Naples argues that the Trustee's current allegations against him on the civil conspiracy claims are still insufficient. Naples contends that the only act he is alleged to have taken is causing the Debtors to retain Winstead as counsel.  Naples argues, however, that there are no allegations that he himself made any agreements or engaged in any conduct relating to any alleged unlawful purpose.  Accordingly, Naples argues that the Trustee has failed to state a claim for civil conspiracy with sufficient specificity.

The Court disagrees.  In the Second Amended Complaint, the Trustee alleges that Naples caused the Debtors to hire Winstead for the purpose of preferring MDC's interests over the interests of other creditors.  (Second Am. Compl. ¶ 95.)  The Trustee further alleges that this purpose was achieved through the July 2004 Restructuring and that Naples participated as a director of the Debtors in specific acts in furtherance of that Restructuring.  (Second Am. Compl. ¶¶ 59, 76, 95.)  The Court concludes that these allegations are sufficient to state a claim against Naples for civil conspiracy and aiding and abetting civil conspiracy.  The motion to dismiss these claims will be denied.

4.    <u>In Pari Delicto Doctrine</u>

Naples argues that the Trustee's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty,

34

aiding and abetting fraudulent transfers, corporate waste, deepening insolvency and civil conspiracy are all barred by the in pari delicto doctrine and should be dismissed. The in pari delicto doctrine states that "a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 354 (3d Cir. 2001). This doctrine bars a claim by a corporation against its officers if the wrongful conduct that was committed by the corporation's officers can be imputed to the corporation itself. Id. A court will impute the fraud of an officer or agent to the corporation where the officer or agent commits the allegedly fraudulent act in the course of his employment for the benefit of the corporation. Id.

Naples argues that his conduct in connection with the April 2003 Sales Transaction, the July 2004 Restructuring, the Inter-Company Transfers and wrongfully continuing the Debtors' existence was done in the course of his actions as a director of the Debtors and conferred significant benefit on the Debtors. Naples also argues that even if the Debtors did not receive a benefit from the transactions, the claims are still barred by in pari delicto under the "sole actor" exception. Id. at 359. Because the Trustee alleges that MDC controlled the Debtors through Naples and the other Director Defendants, MDC was the "sole actor" for the Debtors. Therefore, Naples argues their

acts must be imputed to the Debtors and any claim against them is barred.

The Trustee argues that the <u>in pari delicto</u> argument is merely an attempt to preserve an argument that the Court has already rejected. In the June 2007 Opinion, the Court denied Winstead's motion to dismiss the breach of fiduciary duty claim because it was an insider of the Debtors and assisted the Debtors in carrying out the alleged scheme. <u>Brown Schools</u>, 368 B.R. at 394. The Trustee argues that, although the Court did not expressly refer to the <u>in pari delicto</u> doctrine in doing so, that doctrine is also not applicable to corporate insiders. <u>See, e.g.</u>, <u>In re KDI Holdings, Inc.</u>, 277 B.R. 493, 518 (Bankr. S.D.N.Y. 1999) ("[T]he <u>in pari delicto</u> doctrine is inapplicable where a cause of action is brought against an insider."); <u>In re Adelphia Commc'ns Corp.</u>, 322 B.R. 509, 529 n.18 (Bankr. S.D.N.Y. 2005) ("The [<u>in pari delicto</u>] defense is inapplicable in this matter because the cause of action is brought against an insider."). The Trustee has alleged that Naples is an insider of the Debtor due to his position on the Debtors' Boards of Directors. Therefore, the Trustee argues that the <u>in pari delicto</u> doctrine is inapplicable and the Court should reject Naples' argument.

The Court agrees with the Trustee that the <u>in pari delicto</u> doctrine is not applicable to the Trustee's claims made against Naples, because the Trustee has alleged that he is a corporate

insider.  <u>See, e.g.</u>, <u>In re Oakwood Homes Corp.</u>, 340 B.R. 510, 536
(Bankr. D. Del. 2006) ("<u>In pari delicto</u> does not provide a
defense for insiders."). As a result, the Court will deny
Naples' motion to dismiss the claims of breach of fiduciary duty,
aiding and abetting breach of fiduciary duty, aiding and abetting
fraudulent transfers, corporate waste, deepening insolvency, and
civil conspiracy claims on that basis.

     D.    <u>Winstead's Motion to Dismiss</u>

          1.    <u>Breach of Fiduciary Duty, Aiding and Abetting</u>
               <u>Breach of Fiduciary Duty, and Conspiracy Claims</u>

Winstead argues that the Trustee's claims for breach of
fiduciary duty, aiding and abetting breach of fiduciary duty, and
conspiracy are no more than deepening insolvency claims that
should be dismissed because Delaware does not recognize such a
cause of action.  <u>Trenwick</u>, 2007 Del. LEXIS 357, at *1, <u>aff'g</u> 906
A.2d 168.  Winstead further contends that the only damages
allegedly caused by Winstead are for deepening insolvency and
therefore the Trustee's claims should be dismissed.

For the reasons stated in Part IV.B.2. above, the Court will
deny Winstead's motion.  While <u>Trenwick</u> holds that there is no
independent cause of action for deepening insolvency, it does not
require the dismissal of the claims against Winstead for breach
of fiduciary duty, aiding and abetting breach of fiduciary duty,
and conspiracy.  Further, as the Court concluded above, the

Trustee has alleged sufficient harm to the Debtors to withstand a motion to dismiss.

    2.   <u>Fraudulent Transfers</u>

The Trustee has asserted that Winstead is liable for two fraudulent transfers under an actual or constructive fraud theory.  The first is the Debtors' grant of a first lien to TIAA and a second lien to MDC in July 2004.  The second is the Debtors' payment of legal fees to Winstead during the two years prior to the Debtors' bankruptcy proceedings.  Winstead argues that both claims should be dismissed.

    a.   <u>Actual Fraud</u>

    i.   <u>July 2004 Restructuring</u>

Winstead argues that the Trustee's claim against it for a fraudulent transfer stemming from its advising the Debtors during the July 2004 Restructuring fails for three reasons.  First, Winstead argues that the claim is barred by the Court's June 2007 Opinion to the extent that the claim challenges the first lien granted by the Debtors to TIAA.  In that decision, the Court held that the first lien is not avoidable and its creation is not actionable under section 550.  Winstead argues that the Trustee must be able to avoid the transfer before he can seek to recover the property or its value from the initial transferee, the subsequent transferee, or the entity for whose benefit the transfer was made.  <u>See, e.g.</u>, <u>IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)</u>, 408 F.3d 689, 703 (11th Cir. 2005).

Winstead further argues that the claim fails because the Trustee did not allege that the Debtors paid the MDC Defendants anything on their second lien.  Winstead argues that this omission shows that the Trustee has not alleged that the second lien granted to MDC depleted the Debtors' estates.  Therefore, Winstead contends that the Trustee has not stated a valid fraudulent transfer claim against Winstead.

The Trustee argues that Winstead has misunderstood his request for damages.  The Trustee is not seeking to recover the $18 million paid to TIAA as a fraudulent conveyance under section 550(a), but rather is seeking $18 million in damages for the Defendants' breach of fiduciary duty.  The Trustee has alleged that the MDC Defendants and Naples engaged in self-dealing, in breach of their fiduciary duty to the Debtors' creditors.  The Trustee has further alleged that Winstead aided, abetted and substantially assisted the other Defendants in effectuating the July 2004 Restructuring, in breach of their fiduciary duties.  Therefore, the Trustee argues that his claim for recovery of damages in the amount paid to satisfy the first lien to TIAA on a breach of fiduciary duty claims is not barred by the Court's prior opinion.

The Court agrees with the Trustee and finds that he states a claim for breach of fiduciary duty and fraud and is entitled to present evidence of the amount of damages caused thereby.

ii. <u>Fees Paid</u>

In the Second Amended Complaint, the Trustee alleges that Winstead directly received a benefit from the July 2004 Restructuring, namely the $100,000 fee it received for advising the Debtors to engage in the July 2004 Restructuring and the $600,000 in legal fees it received for defending suits brought against the Debtors.  (Second Am. Compl. ¶ 76(b)(iv).)

This claim was dismissed with leave to replead in the June 2007 Opinion because the Trustee had not "allege[d] enough facts from which the Court [could] conclude that the payment [of the fees] was for less than reasonably equivalent value or was to hinder, delay, or defraud the Debtors' creditors."  <u>Brown Schools</u>, 368 B.R. at 413-14.

Winstead argues that the Trustee's Second Amended Complaint suffers from the same deficiencies as the first.  Winstead contends that the Trustee has still not alleged any facts supporting a conclusion that in paying Winstead's legal fees, the Debtors intended to hinder, delay or defraud their creditors. Winstead argues that the Second Amended Complaint, much like the First Amended Complaint, "does little beyond merely reciting the elements of fraud."  <u>Id.</u> at 403.  <u>See also</u> <u>In re Crazy Eddie Sec. Litig.</u>, 802 F. Supp. 804, 816 (E.D.N.Y. 1992) (dismissing actual fraud claim against auditor because the conclusory assertion that "payments to [the auditor] were part of a scheme to defraud other creditors ha[d] not been supported by any facts suggesting that

[the debtor] made those payments for the purpose of defrauding other creditors.")。   Therefore, Winstead argues that the claims for actual fraud relating to payment of its fees should be dismissed.

The Trustee argues that the facts pleaded support his claim that Winstead received its fees knowing that they were payment for helping MDC receive priority over the Debtors' other creditors thereby hindering or defrauding those creditors. First, the Trustee alleges that Winstead took on the representation of the Debtors because of its partner's close friendship with Defendant McCown.   Next, the Trustee alleges that Winstead knew that the Debtors were insolvent and nonetheless caused the Debtors to serve MDC's interests by aiding in the July 2004 Restructuring, which was intended to encumber the Debtors' assets in favor of MDC and hinder creditors from satisfying legitimate claims against the Debtors.   (Second Am. Compl. ¶¶ 57-59.)   The Trustee alleges a memo written by the Winstead partner evidences precisely that intent.   (Id. at ¶ 59.)

The Court finds that the Second Amended Complaint pleads sufficient facts to support a claim that Winstead received fees from the Debtors knowing and intending that they were payment for helping MDC hinder the Debtors' other creditors.   These allegations support a claim to avoid the payment of those fees as fraudulent conveyances.   See, e.g., In re Interco Systems, Inc., 202 B.R. 188, 193 n.4 (Bankr. W.D.N.Y. 1996) (if "a corporation

knowingly paid professional fees for a transaction intended to
solely benefit a principal so as to remove assets from the
corporation otherwise available to creditors, especially if an
intent was discussed with or otherwise made known to the entity
providing the services, doing the billing and receiving payment,
an avoidable fraudulent conveyance under Section 548(a)(1) could
be proven.")  Therefore, the Court will deny Winstead's motion to
dismiss this count.

### b.    Constructive Fraud

Winstead further contends that the Trustee has failed to
state a claim against Winstead for constructive fraud.  Winstead
argues that to establish constructive fraud, the Trustee must
show that the challenged transfer was made for less than a
"reasonably equivalent value."  11 U.S.C. § 548(a)(1)(B).

The Trustee alleges that the Debtors did not receive
reasonably equivalent value for the payment of fees to Winstead
because those fees were "made as part of an effort to aid, abet
and facilitate the breach of fiduciary duties owed to the
Debtors, and to hinder, delay and defraud non-insider creditors
of the Debtors."  (Second Am. Compl. ¶ 79.).

Winstead argues that this conclusion is erroneous because
there is no basis for concluding that either the Debtors paid
Winstead for services it did not perform or that the Debtors paid
Winstead more than its services were worth.  See Interco, 202
B.R. at 192-94 (determining that trustee did not meet his burden

of showing that the debtor received less than reasonably equivalent value in exchange for services that a law firm performed where trustee did not allege (1) that the firm did not perform services which debtor requested it perform or (2) that the services performed were not reasonably worth the amount billed).  Winstead contends that the Trustee's Second Amended Complaint fails to allege facts from which the Court may conclude that the payment of legal fees to Winstead was for less than reasonably equivalent value and, therefore, the claim for recovery of the alleged constructively fraudulent transfers should be dismissed.

The Trustee provided no response the Winstead's argument on this point.  However, in the Second Amended Complaint, the Trustee alleges that the services rendered by Winstead in connection with the 2004 Restructuring did not benefit the Debtors but instead caused MDC to receive a preferred claim over other unsecured creditors at a time when the Debtors' bankruptcy and liquidation were inevitable.  (Second Am. Compl. ¶¶ 76, 79.) Consequently, the Court concludes that the Trustee has alleged sufficient facts from which it may conclude that the value of Winstead's services to the Debtors was less than reasonably equivalent to the legal fees paid to Winstead.  Accordingly, the Court will deny Winstead's motion to dismiss the constructive fraud claim.

3.   <u>Aiding and Abetting Fraudulent Transfers</u>

The Trustee does not allege that Winstead was a transferee in the July 2004 Restructuring.  Instead, the Trustee alleges that Winstead aided and abetted the other Defendants in designing and carrying out the restructuring.  (Second Am. Compl. ¶¶ 76, 78, 86.)

Winstead argues that neither federal bankruptcy law nor Delaware law recognizes liability for aiding a fraudulent transfer.  <u>See, e.g.</u>, <u>Mack v. Newton</u>, 737 F.2d 1343, 1357 (5th Cir. 1984) (recovery under the Bankruptcy Code does not extend to permit judgment against one who did not receive the property transferred); <u>Jackson v. Star Sprinkler Corp. of Florida</u>, 575 F.2d 1223, 1234 (8th Cir. 1978) (same); <u>Elliott v. Glushon</u>, 390 F.2d 514, 516 (9th Cir. 1967) (same); <u>Trenwick</u>, 906 A.2d at 203 (holding that there is no cause of action for 'aiding and abetting' a fraudulent conveyance), <u>aff'd</u> 2007 Del. LEXIS 357, at *1.

For the reasons stated in Part IV.B.4. above, the Court agrees with Winstead and will dismiss the count against it for aiding and abetting a fraudulent transfer.


V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that the Defendants' motions to dismiss will be granted in part.


44

An appropriate Order is attached.

Dated: April 24, 2008

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

## APPEAL TRANSMITTAL SHEET

Case Number: _____  ○ BK   ○ AP

   If AP, related BK Case Number: _____

Title of Order Appealed:

_____

      Docket Number: _____      Date Entered: _____

Item Transmitted:  ○ Notice of Appeal              ○ Motion for Leave to Appeal
                   ○ Amended Notice of Appeal      ○ Cross Appeal
                   Docket Number: _____        Date Filed: _____

*Appellant/Cross Appellant:                    *Appellee/Cross Appellee

_____          _____

Counsel for Appellant:                     Counsel for Appellee:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

*If additional room is needed, please attach a separate sheet.

Filing Fee paid?   ○ Yes   ○ No

IFP Motion Filed by Appellant?   ○ Yes   ○ No

Have Additional Appeals to the Same Order been Filed?  ○ Yes   ○ No

   If so, has District Court assigned a Civil Action Number?   ○ Yes   ○ No   Civil Action # _____

Additional  Notes:

_____

_____          By: _____

Date                                            Deputy Clerk

_____

FOR USE BY U.S. BANKRUPTCY COURT

Bankruptcy Court Appeal (BAP) Number: _____
7/6/06