# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br>THE BROWN SCHOOLS, INC., *et al.*,<br><br>            Debtors. | Chapter 7<br><br>Case No. 05-10841 (MFW) |
| GEORGE L. MILLER, Chapter 7 Trustee of<br>The Brown Schools, Inc.<br><br>          Plaintiff,<br><br>v.<br><br>McCOWN DE LEEUW & CO., INC.,<br>KIDS ACQUISITION, LLC,<br>McCOWN DE LEEUW & CO. III, L.P.,<br>MDC MANAGEMENT COMPANY, III, L.P.,<br>MDC MANAGEMENT COMPANY, IIIA, L.P.,<br>McCOWN DE LEEUW & CO. III (EUROPE), L.P.,<br>McCOWN DE LEEUW & CO. III (ASIA), L.P.,<br>GAMMA FUND, LLC,<br>McCOWN DE LEEUW & CO. IV, L.P.,<br>McCOWN DE LEEUW & CO. IV ASSOCIATES, L.P.,<br>DELTA FUND, LLC,<br>MDC MANAGEMENT COMPANY IV, LLC,<br>McCOWN DE LEEUW & CO., LLC,<br>GEORGE McCOWN,<br>ROBERT HELLMAN,<br>ROBERT J. NAPLES, and<br>WINSTEAD SECHREST & MINICK, P.C.<br><br>          Defendants. | C.A. No. 08-00096 (SLR) |

## DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO APPEAL

{00220510;v1}1089296 v2/SF

The Defendants[1] respectfully submit this joint Reply Brief in support of their motion (the "Joint Motion") for leave to appeal, pursuant to 28 U.S.C. §§ 158(a) and Rules 8001, 8002 and 8003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), from the Bankruptcy Court's Order dated and entered on the docket on April 24, 2008 [Adv. Docket No. 107] (the "Order"), issued in conjunction with the Bankruptcy Court's Memorandum Opinion on the Defendants' motions to dismiss [Adv. Docket No. 106] (the "Opinion"). The Defendants' motions to dismiss sought dismissal of the Second Amended Complaint ("Second Complaint") [Adv. Docket No. 72] filed by George L. Miller, Chapter 7 Trustee ("Trustee") for debtor The Brown Schools, Inc. and its subsidiaries (collectively, "TBS" or the "Debtors"). The Order granted in part and denied in part the *MDC Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, In Part, Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* [Adv. Docket No. 83], *Winstead's Motion to Dismiss the Second Amended Complaint* [Adv. Docket No. 78], and *Defendant Robert J. Naples' (I) Motion to Dismiss Second Amended Complaint, (II) Joinder in the MDC Defendants' Motion to Dismiss Second Amended Complaint, in Part, and (III) Joinder in Winstead's Motion to Dismiss Second Amended Complaint* [Adv. Docket No. 88] (together, the "Motions to Dismiss").

---

[1] Defendants McCown De Leeuw & Co., Inc., Kids Acquisition, LLC, McCown De Leeuw & Co. III, L.P., MDC Management Company, III, L.P. MDC Management Company, IIIA, L.P., McCown De Leeuw & Co. III (Europe), L.P., McCown De Leeuw & Co. III (Asia), L.P., Gamma Fund LLC, McCown De Leeuw & Co. IV, L.P., McCown De Leeuw & Co. IV Associates, L.P., Delta Fund, MDC Management Company IV, LLC, McCown De Leeuw & Co., LLC, George McCown, and Robert Hellman are collectively the "MDC Defendants" and, together with defendants Robert J. Naples and Winstead, Sechrest & Minick, P.C., are the "Defendants."

# I.
# ARGUMENT

**A.    The Trustee's Response Makes Clear That 90% Of The Alleged Damages Sought In This Case Are Barred As A Matter Of Law Because, According To The Trustee's Own Allegations, The Debtors' Liquidation Was Inevitable.**

1.    Far from rebutting the arguments advanced by Defendants in their Joint Motion, the Trustee's Answer in opposition ("Answering Brief") demonstrates why immediate review of the controlling issues of law presented would materially advance the termination of this litigation. In the Second Complaint the Trustee alleges that as of April 2003, prior to any of the conduct that the Trustee alleges as the basis for damages, the Debtors were in a "hopeless" condition, had "no prospect of surviving and continuing as a going concern," and their liquidation was inevitable.  (Second Complaint, ¶41.) The first controlling question of law is whether the Debtors could suffer any legally cognizable injury or damage as a result of a delay in that inevitable liquidation, including from the alleged deepening of their insolvency or the payment to TIAA[2] and other non-insider creditors on their creditors claims.  This question is controlling because to prevail on his causes of action for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, or civil conspiracy – the primary causes of action in the Second Complaint – the Trustee must establish legally cognizable injury or damage to the Debtors.  However, the Trustee's own allegations that the Debtors' liquidation was inevitable as of a date *long before* the alleged wrongful acts by the Defendants means, as a matter of law, that they could not have suffered any injury or damage because of the allegedly delayed liquidation at the core of the Trustee's claims.

2.    The Trustee makes clear in his Answering Brief that damages based on the delay in liquidation and the resulting continued operation of the Debtors' business, after their

---

[2] Capitalized terms not otherwise defined herein have the meaning given them in the Joint Motion.

liquidation is alleged to have become inevitable, represent the vast majority of the damages sought in this case. On pages 8 and 9 of the Answering Brief, the Trustee explains that his purported damages include several such components:

- "The payment of more than $18 million to TIAA;"

- "The wasting and loss of company assets in an amount that has yet to be determined;"

- "Millions of dollars of improper transfers among the subsidiaries; and" [3]

- "Operating losses and increased liabilities of more than $20 million incurred during the period that Defendants fraudulently prolonged the business while they looted the company and enriched themselves."

3.      These alleged damages appear to exceed $43 million, far beyond any money or liens the Defendants may have received. In fact, the Trustee alleges that the Defendants themselves received no more than a total of $5.3 million, specifically (1) payments of "more than $1.7 million directly and as much as $2.9 million through an inter-creditor agreement with TIAA" and (2) "payment of more than $700,000 to the law firm defendant." (Answering Brief at p. 9.) Of this amount, only $2.4 million in the aggregate is based on direct payments by the Debtors to any Defendant. [4]

4.      Although the Trustee continues to dress up his damages claims as if they are all for purported self-dealing, his Answering Brief confirms that no more than $5.3 million of the $43.3 million in damages alleged represent amounts received directly, or even indirectly, by any

---

[3] In his opposition to the Defendants' Motions to Dismiss below, the Trustee conceded that his allegations regarding transfers among the Debtors' subsidiaries were "not pleaded as a separate basis for liability." *Omnibus Answering Brief of Plaintiff Trustee George L. Miller in Opposition to Motions of MDC Defendants, Winstead and Robert Naples to Dismiss Second Amended Complaint*, p. 25 n.11 (Adv. Docket No. 97). Given this concession, the Trustee should not be permitted to assert that these inter-company transfers as a basis for damages. In any event, they are also amounts resulting simply from the delayed liquidation of the Debtors.

[4] The only other transfer to any of the Defendants, the deeply subordinated second lien granted to certain MDC entity defendants, is worthless because the senior creditor, TIAA, has not been paid in full, and the Trustee has not alleged that it caused any damage to the Debtors.

of the Defendants. Critically, the other approximately 90% of these alleged damages ($37.7 million out of $43.3 million) are based strictly on the alleged dissipation of assets through the continued operation of Debtors and payments to the Debtors' non-insider creditors. Indeed, all of these supposed damages were incurred after the point in April 2003 when the Trustee alleges that the Debtors' liquidation was already inevitable.

5.     In his attempt to avoid the on-point decision in In re Parmalat Sec. Lit., 501 F.Supp.2d 560 (S.D.N.Y. 2007), the Trustee actually confirms the devastating impact it has on his case. At page 10 of the Answering Brief, the Trustee concedes that the Parmalat decision means that "simply continuing to operate as its assets declined may not have constituted harm to a company whose liquidation was inevitable." As the Parmalat court held: "If the Companies were insolvent by 1999 and liquidation was inevitable, *then they had nothing to lose simply by continuing to operate, even if that would have meant the continued depletion of their assets."* Id. at 576 (emphasis added). Given the extensive allegations of fraud and looting involving the Parmalat companies, id. at 566, the Parmalat court's holding was not, as the Trustee implies, restricted only to situations in which there were no allegations of self-dealing or wrongdoing. Instead, the Parmalat court squarely held that a corporation whose liquidation is inevitable in fact suffers no harm at all from its continued operation, even if it means the depletion of its assets. As in Parmalat, here the continued operation of the business and depletion of assets through payment of non-insider creditors, including TIAA,[5] did not injure or damage the Debtors, and 90% of the Trustee's alleged damages are barred as a matter of law.

6.     Searching for a way to limit the effect of the Parmalat decision, the Trustee argues that Parmalat held that "even an insolvent corporation can be the victim of theft or looting."

---

[5] In the Second Complaint, the Trustee expressly states that "[n]o claims or wrongdoing are asserted herein by the Trustee against TIAA." (Second Complaint, ¶ 45 n. 2.)

While that may be true, labels aside, the Trustee's claims are not for theft or looting. Instead, the overwhelming majority of the alleged damages are for "operating losses and increased liabilities of more than $20 million," the "wasting and loss of company assets," and the $18 million used to pay TIAA on debt that the Trustee concedes the Debtors legitimately owed. These are not amounts that the Defendants allegedly stole, looted, converted, or received, directly or indirectly. Instead, they were incurred or paid out by the Debtors to non-insider creditors during their continued operation after the point when the Trustee alleges the Debtors' liquidation was already inevitable. As the Trustee is forced to admit, a defunct corporation for which liquidation is inevitable simply is *not harmed* by its continued operation and resulting dissipation of assets. As a result, 90% of the damages alleged by the Trustee are for amounts which, as a matter of law, did not harm the Debtors.[6]

7.    Further, the <u>Parmalat</u> court's discussion of theft or looting did not change its inevitable liquidation holding. Theft or looting is harmful because it takes assets of a liquidating corporation away from being used to operate the business or pay creditors and instead diverts them to non-creditors who have no right to the assets at all. The harm from theft or looting is measured by the amount of the stolen or looted assets diverted to such parties. What the <u>Parmalat</u> decision makes clear, however, is that the continued operation of a defunct business and payment of its non-insider creditors, upon which 90% of the Trustee's alleged damages are based, does not harm the liquidating corporation.

8.    Having conceded that a corporation whose liquidation is inevitable suffers no harm from its continued operation and dissipation of its assets, the Trustee contends that this

---

[6] Moreover, the Trustee fails to cite a single case, in his Answering Brief or below, supporting the implied proposition that a corporation, especially one whose liquidation is alleged to be inevitable, is somehow harmed by paying its undisputed, non-insider creditors on their claims.

Court should ignore that fact because of his allegations that the Defendants breached fiduciary duties and engaged in self-dealing. Essentially, the Trustee's argument is that even if the continued operation of the Debtors' business and dissipation of assets through payment of non-insider creditors causes no harm because the Debtors' liquidation was inevitable, the Defendants' alleged breach of fiduciary duty suddenly transforms the exact same continued operation and payment of non-insider creditors into something immensely harmful, to the tune of tens of millions of dollars in damages. The Trustee cites no authority to support this baseless proposition.

9.      Likewise, the Trustee's contention that his claims against the Defendants are like the corporation "harmed by the arsonist who burns its offices or the dishonest cashier who converts money from the till" is simply false. In reality, 90% of the Trustee's alleged damages are based on "operating losses and increased liabilities," the payment to non-insider creditor TIAA on its existing debt, and the "wasting and loss of company assets" from the continued operation of the business – and are not based on criminal destruction, theft, or even payments to insiders. The Trustee cannot bootstrap claims for 10% of the damages he seeks into a basis to recover tens of millions of dollars in purported damage -- representing literally 90% of his alleged damages -- when the continued operation of the Debtors and payment to non-insider creditors caused no harm to the Debtors as a matter of law. Thus, even if the Defendants breached fiduciary duties in an attempt to engage in self-dealing (which the Defendants vigorously dispute), as a matter of law the continued operation of the Debtors, payment of non-insider creditors, and resulting dissipation of assets did not harm the Debtors.

10.      Finally, the Trustee's assertion that the appeal is untimely lacks any merit because it is premised upon the Bankruptcy Court's erroneous characterization of the Defendants'

damages argument as a standing challenge. In the second Motions to Dismiss, the Defendants argued that even though the Trustee has standing to sue for damages suffered by the corporation, as a matter of law the corporation did not suffer any damages because its liquidation was inevitable according to the Trustee's own allegations. See, e.g., *Reply Memorandum of Law in Further Support of MDC Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* [Adv. Docket No. 101], p. 8, ¶17. Moreover, the Parmalat decision, upon which the Defendants base this argument, was not even decided until two months *after* the Bankruptcy Court rendered its initial decision on the motions to dismiss the Trustee's earlier, amended complaint in June 2007. The Bankruptcy Court erred in mischaracterizing as a standing challenge the Defendants' argument based on lack of injury and damages, and the Trustee's Answering Brief compounds the error. The Defendants' appeal is timely.

**B.      Deepening Insolvency Is Not A Valid Theory Of Injury Or Damages Under Delaware And Third Circuit Law, Especially Given The Trustee's Allegation That The Debtors' Liquidation Was Inevitable.**

11.      The second controlling question of law presented here is whether deepening insolvency can be a valid theory of injury or damages for any cause of action in light of the Third Circuit's decision in Seitz v. Detweiler, Hershey & Associates (In re CitX Corp.), 448 F.3d 672 (3d Cir. 2006) ("we do not mean to imply that deepening insolvency would be a valid theory of damages for any other cause of action, such as fraud, and Lafferty did not so hold"). This is a critical issue because the Trustee has made deepening insolvency damages a central focus of his breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy causes of action in the Second Complaint.

12.      The CitX decision greatly limited the Third Circuit's prior decision in Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340 (3d Cir. 2001), which

had held that Pennsylvania, unlike Delaware, would recognize a cause of action for deepening insolvency. Further, the only other decisions by bankruptcy courts in the District of Delaware that have addressed the CitX decision, Off'l Comm. of Unsecured Creditors v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.), 353 B.R. 820, 849 (Bankr. D. Del. 2006), and Michael B. Joseph, as Chapter 7 Trustee for Troll Communications, LLC, et al. v. Lincoln E. Frank, et al. (In re Troll Communications, LLC), 2008 WL 901173 (Bankr. D. Del. April 2, 2008), both applied CitX and held that deepening insolvency is not a valid theory of injury or damages for any independent cause of action, including breach of fiduciary duty.

13.    Instead of following these Delaware decisions, the Bankruptcy Court chose to follow an out-of-circuit decision from the bankruptcy court in the District of Columbia in Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp. I), 353 B.R. 324 (Bankr. D.C. 2006). The Tuft court acknowledged that the CitX decision gave it "serious pause" but, noting that it was not bound by the Third Circuit's decision, held that deepening insolvency would be a viable theory of damages in its jurisdiction "[u]nless and until this court is told differently by a higher court *in its own circuit*." Id. at 336-33 (emphasis added).  Rather than applying the non-binding District of Columbia decision in Tuft, the Bankruptcy Court should have followed the Third Circuit's own decision in CitX and, like the Delaware Bankruptcy Court decisions in Radnor Holdings and Troll Communications, held that deepening insolvency is not a valid theory of injury or damage for any cause of action.

14.    In his Answering Brief, the Trustee argues that deepening insolvency damages should be recoverable, even in the face of the Third Circuit's CitX decision, but offers nothing beyond the Bankruptcy Court's own decision in support. Then, hedging his argument, he contends that even if damages cannot be measured by the "impact upon the solvency calculation"

(quoting in footnote 4 of the Answering Brief from Troll Communications, 2008 WL 901173 (Bankr. D. Del. April 2, 2008), he should still be able to recover for alleged damages due to an increase in liabilities, a decrease in fair asset value, or lost profits caused by the continued operation of the Debtors' business based on his breach of fiduciary duty claim. This argument fails as a matter of law.

15.     Even if damages measured by an increase in liabilities, a decrease in asset value, or lost profits may be recoverable on a breach of fiduciary duty claim in some instances, they are not recoverable here. As discussed at length above, the Trustee alleges that the Debtors were "hopeless," had "no prospect of surviving or continuing as a going concern," and that their liquidation was inevitable as of April 2003, before any of the alleged breaches of fiduciary duty occurred. The continued operation of the Debtors' business leading to alleged "operating losses and increased liabilities of more than $20 million," "wasting and loss of company assets," and payment of non-insider creditors on their undisputed claims could not have injured or harmed any of the Debtors as a matter of law. As such, it does not matter whether the Trustee characterizes his damages claim as one for deepening insolvency, increased liabilities or losses, decreased asset values, or dissipation of assets: none of these purported damages is recoverable against the Defendants because the Debtors' liquidation was, at all relevant times, already inevitable.[7]

---

[7] The discussion above reflects that there are substantial grounds for difference of opinion on both of the controlling questions of law for which the Defendants seek leave to appeal, and the Defendants respectfully disagree with the Bankruptcy Court's decision on these issues.

**C.    Leave To Appeal Should Be Granted Because An Immediate Appeal Will Materially Advance The Ultimate Termination Of The Litigation And Avoid Substantial, Unnecessary Discovery Expense And A Waste Of Judicial Resources.**

16.    These issues go to the core of the Trustee's ability to establish damages for his sweeping claims, and deciding them on appeal at this time will materially advance the ultimate termination of the litigation.  Despite the Trustee's transparent attempt to minimize these issues as mere "damages nuances," 90% of the damages sought in this case are barred as a matter of law.  Unless leave to appeal is granted, substantial effort and expense will be expended unnecessarily in examining the bases for these unrecoverable damages once discovery commences in this case. The range of discovery implicated by the Trustee's legally barred damages will include, among others, the financial condition of the Debtors in April 2003, the Debtors' operations, assets, liabilities, profits and losses over the intervening two years before the bankruptcy was filed in March 2005, the amount, nature, and identity of creditors and their claims in April 2003 and in the bankruptcy case, and the Debtors' extensive financial and accounting records for these periods, among others.  In contrast, if the decision below is reversed on appeal, all of this discovery could be avoided, leaving the focus instead on the few, specific payments allegedly received by certain Defendants, which the Trustee asserts total between $2.4 million and $5.3 million.

17.    Avoiding the broad discovery and attendant expense described above more than justifies the granting of leave to appeal the Bankruptcy Court's decision. As a District Court held last year in Patrick v. Dell Financial Services, 366 B.R. 378, 387 (M.D. Pa. 2007), an immediate appeal should be granted when reversal on appeal would "resolve a large portion of the litigation without wasting the scarce resources of the Bankruptcy Court and the parties," and where "[d]iscovery would also be simplified. . . and could proceed in an expeditious manner without significant expense." The District Court held that this is true even if reversal itself would not

terminate the litigation. Id. The compelling need to avoid extensive but unnecessary discovery and judicial inefficiency in this litigation demonstrates that immediate review of the Bankruptcy Court's decision would materially advance the termination of the litigation and readily satisfies any exceptional circumstances that may be required.

## II.

## CONCLUSION

18.    For the foregoing reasons, Defendants respectfully request that this Court grant leave to appeal from the Bankruptcy Court's Order.

Dated:  May 30, 2008
         Wilmington, Delaware

ASHBY & GEDDES, P.A.

_____
William P. Bowden (I.D. #2553)
Amanda M. Winfree (I.D. #4615)
Karen B. Skomorucha (I.D. #4759)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone:  (302) 654-1888
Facsimile:  (302) 654-2067

-and-

COOLEY GODWARD KRONISH LLP
Robert L. Eisenbach III
Steve Friedlander
101 California Street, 5th Floor
San Francisco, CA  94111-5800

-and-

Ronald R. Sussman
Jeffrey L. Cohen
1114 Avenue of the Americas
New York, NY  10036

*Counsel for the MDC Defendants*

BLANK ROME LLP

/s/ *Michael D. DeBaecke*
Thomas P. Preston (I.D. #2548)
Michael D. DeBaecke (I.D. #3186)
1201 Market Street, Suite 800
Wilmington, DE  19801
Telephone:  (302) 425-6412
Facsimile:  (302) 428-5107

-and-

Ian M. Comisky
One Logan Square
Philadelphia, PA  19103
Telephone:  (215) 569-5500
Facsimile:  (215) 569-5555

*Counsel for Robert J. Naples*


RICHARDS, LAYTON & FINGER, P.A.

/s/ *John H. Knight*
John H. Knight (I.D. #3848)
Chun I. Jang (I.D. #4790)
920 North King Street
One Rodney Square
Wilmington, DE  19899
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

BAKER BOTTS L.L.P.
Rod Phelan (Texas I.D. #15899800)
David Genender (Texas I.D. #00790757)
Thomas E. O'Brien (Texas I.D. #24046543)
2001 Ross Avenue, Suite 600
Dallas, TX  75201-2980
Telephone:  (214) 953-6500
Facsimile:  (214) 953-6503

*Counsel for Winstead P.C.*

# <u>UNREPORTED OPINION</u>

Westlaw.

--- B.R. ----
--- B.R. ----, 2008 WL 901173 (Bkrtcy.D.Del.)
**(Cite as: --- B.R. ----, 2008 WL 901173)**

In re **Troll Communications,** LLC
Bkrtcy.D.Del.,2008.
Only the Westlaw citation is currently available.
United States Bankruptcy Court,D. Delaware.
In re **TROLL COMMUNICATIONS,** LLC, et al.,
Debtors.
Michael B. Joseph, as Chapter 7 Trustee for **Troll
Communications,** LLC, et al., Plaintiff
v.
Lincoln E. Frank, Andrew E. Kaplan, Peter E.
Bergen, Daniel Neuwirth, Curtis Thompson, Jeffrey
Lucking, Terry Tuttle, Seth J. Lehr, Scott Perricelli,
Quad Venture Partners SBIC, LP, Quad Venture
Partners, LP, Quad Ventures, LLC, Defendants.
**Bankruptcy No. 03-11508 (KJC).**
**Adversary No. 05-51605 (KJC).**

April 2, 2008.

**Background:** Chapter 7 trustee brought adversary
proceeding against corporations holding interests in
debtors and related individual defendants, asserting
claims for breach of fiduciary duty and claims to
avoid and recover fraudulent and preferential
transfers. Defendants moved to dismiss.

**Holdings:** The Bankruptcy Court, Kevin J., Carey, J.,
held that:
(1) breach of fiduciary duty claim alleging violation
of duty of loyalty could not be dismissed based upon
presumption of business judgment rule;
(2) complaint did not sufficiently allege claims for
breach of fiduciary duty or aiding and abetting breach
of fiduciary duty against debtors' officers;
(3) complaint stated claim for aiding and abetting
breach of fiduciary duty;
(4) deepening insolvency was not valid cause of
action or theory of damages under Delaware law;
(5) trustee adequately alleged debtors' insolvency at
time of challenged transfers in asserting fraudulent
and preferential transfer claims; and
(6) trustee satisfied fraud pleading rule in asserting
fraudulent transfer claims under Delaware law.

Motions to dismiss granted in part and denied in part.

[1] Corporations 101 ⚷0

101 Corporations
Plaintiff must plead around the business judgment
rule to survive a motion to dismiss a claim against
corporate directors for breach of fiduciary duty under
Delaware law.

[2] **Corporations 101** ⚷0

101 Corporations
In asserting claim for breach of fiduciary duty against
corporate directors under Delaware law, plaintiff can
rebut the presumption of the business judgment rule
by showing that the board of directors, in reaching its
challenged decision, violated any one of its triad of
fiduciary duties: due care, loyalty, or good faith.

[3] **Corporations 101** ⚷0

101 Corporations
Under Delaware law, claim alleging that
corporation's directors violated their duty of loyalty,
in breach of their fiduciary duties, in using funds
from equity buy-in to pay insider debt at a time when
corporation was unable to earn sufficient money from
sales to fund current operations could not be
dismissed based upon presumption arising under
business judgment rule when complaint alleged that
majority of board members had financial interests on
both sides of transaction and that remaining board
member was not independent.

[4] **Corporations 101** ⚷0

101 Corporations
Under Delaware law, duty of loyalty mandates that
the best interest of the corporation and its
shareholders takes precedence over any interest
possessed by a director, officer, or controlling
shareholder and not shared by the stockholders
generally.

[5] **Corporations 101** ⚷0

101 Corporations
To show that a corporate director was interested, for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

purposes of claim alleging breach of fiduciary duty based on duty of loyalty under Delaware law, it is usually necessary to show that the director was on both sides of a transaction or received a benefit not received by the shareholders.

**[6] Corporations 101 ☞0**

101 Corporations
Under Delaware law, complaint did not sufficiently allege claims against corporation's officers for breach of fiduciary duty or aiding and abetting breach of fiduciary duty, which were based upon officers' alleged participation in payments that were authorized by corporation's directors and used funds from equity buy-in to satisfy insider debt at a time when corporation was unable to fund current operations from its sales, in that complaint's allegations regarding officers were vague and lacked adequate detail about which officers, if any, knowingly participated in payments.

**[7] Fraud 184 ☞0**

184 Fraud
To state a claim under Delaware law for aiding and abetting breach of fiduciary duties, plaintiff must show (1) the existence of a fiduciary relationship, (2) a breach of that relationship, and (3) knowing participation by defendant in the fiduciary's breach.

**[8] Corporations 101 ☞0**

101 Corporations
Complaint stated claim against corporation's officer and director for aiding and abetting breach of fiduciary duty by corporation's directors, based upon his alleged participation in payments that were authorized by directors and used funds from equity buy-in to satisfy insider debt at a time when corporation was unable to fund current operations from its sales, given allegation that officer-director participated in directors' authorization of payments, which was sufficient to support claim of knowing participation in other directors' alleged breach of duty of loyalty.

**[9] Corporations 101 ☞0**

101 Corporations

Deepening insolvency of corporation was not valid cause of action or theory of damages under Delaware law.

**[10] Corporations 101 ☞0**

101 Corporations
Exculpation provision that was included in corporation's certificate of incorporation and protected its directors from liability based upon a breach of the duty of care, pursuant to Delaware statute, did not apply to claims based upon breach of duty of loyalty, and thus did not preclude claims against directors for breach of fiduciary duty based on alleged violation of duty of loyalty. 8 West's Del.C. § 102(b)(7).

**[11] Bankruptcy 51 ☞0**

51 Bankruptcy
Chapter 7 trustee adequately alleged debtors' insolvency at time of challenged transfers in asserting fraudulent transfer claims under Delaware law and preferential transfer claims under Bankruptcy Code when trustee alleged that, prior to transfers and continuing through debtors' petition filing, debtors' tangible net worth was valued at negative $13,100,000, that going business qualification rendered debtors' goodwill valueless, and that debtors were unable to climb out of insolvency despite additional funds provided by shareholders, and when financial data contained in complaint supported allegations that debtors had negative net worth and were unable to meet maturing obligations. 11 U.S.C.A. §§ 544, 547(b), 101(32)(A); 6 Del.C. § 1305(b).

**[12] Bankruptcy 51 ☞0**

51 Bankruptcy
Chapter 7 trustee satisfied fraud pleading rule in asserting fraudulent transfer claims under Delaware law, even though trustee did not identify specific creditor with claim that arose before challenged transfers were made, given that trustee, in addition to describing circumstances surrounding transfers, identified transfers by date and amount, identified basis for payment, asserted that transferees were insiders, alleged debtors' financial status, argued about value received in exchange for transfers, and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----
Page 3
--- B.R. ----, 2008 WL 901173 (Bkrtcy.D.Del.)
**(Cite as: --- B.R. ----, 2008 WL 901173)**

alleged generally that there were unsecured creditors whose claims arose before transfers. 11 U.S.C.A. § 544; 6 Del.C. § 1305(b); Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[13] Bankruptcy 51 ☜◎0**

51 Bankruptcy
Greater liberality is afforded in pleading fraud in the bankruptcy setting because it is often a trustee, a third-party outsider to the transaction, who must plead fraud based on secondhand knowledge for the benefit of the bankruptcy estate and its creditors. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[14] Bankruptcy 51 ☜◎0**

51 Bankruptcy
Bankruptcy courts do not generally require trustee asserting fraudulent transfer claim under state law to plead the existence of an unsecured creditor by name. 11 U.S.C.A. § 544.

Jason Custer Powell, Rick S. Miller, Ferry, Joseph & Pearce, P.A., Wilmington, DE, for Plaintiff.
Christopher Martin Winter, Michael R. Lastowski, Richard W. Riley, Duane Morris LLP, William H. Schorling, Buchanan Ingersoll & Rooney PC, James E. O'Neill, Pachulski Stang Ziehl & Jones LLP, Wilmington, DE, Blake I. Hannafan, Michael T. Hannafan, Hannafan & Hannafan, Ltd., Nicholas A. Pavich, Michael T Hannafan & Associates, Ltd., Chicago, IL, for Defendants.

### *MEMORANDUM*[FN1]

KEVIN J. CAREY, Bankruptcy Judge.

### BACKGROUND

**\*1** On May 16, 2003, Troll Communications, LLC and its affiliates filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code.[FN2]The Debtors' cases were converted to cases under chapter 7 of the United States Bankruptcy Code on July 23, 2003 (main case docket no. 207). On July 27, 2003, Michael B. Josephs (the "Trustee") was appointed as the chapter 7 Trustee of the Debtors' estates (main case docket no. 210).

The Trustee commenced this adversary proceeding on May 13, 2005. On October 7, 2005, the Trustee filed the First Amended Complaint (the "Amended Complaint") (docket no. 47). The Amended Complaint asserts four counts against the defendants.[FN3]Count One alleges claims for breach of fiduciary duty against the individual defendants. Count Two seeks avoidance and recovery of fraudulent transfers under 6 Del. C. § 1305(b) and 11 U.S.C. §§ 544, 550 and 551 against Quad Ventures Partners, LP. Count Three seeks avoidance and recovery of certain allegedly preferential transfers under 11 U.S.C. §§ 547, 550, and 551 against Quad Venture Partners, LP.

Before the Court are three motions to dismiss the Amended Complaint filed by the following groups of defendants: (1) Peter Bergen, Jeffrey Lucking and Curtis Thompson (docket no. 49)(the "Bergen Motion to Dismiss"), (2) Lincoln E. Frank, Andrew E. Kaplan, Daniel Neuwirth, Seth J. Lehr, Scott Perricelli, Quad Ventures Partners SBIC, LP, Quad Venture Partners, LP, and Quad Ventures LLC (docket no. 53)(the "Frank Motion to Dismiss"), and (3) Terry Tuttle (docket no. 56)(the "Tuttle Motion to Dismiss")(collectively, the "Motions to Dismiss").[FN4] For the reasons set forth below, the Frank Motion to Dismiss will be granted, in part, and denied, in part, with respect to Count One and will be denied with respect to Counts Two and Three. The Bergen Motion to Dismiss and Tuttle Motion to Dismiss will be granted, but the Trustee will be granted leave to amend the Amended Complaint to set forth more specific allegations relating to a breach of fiduciary duties arising from payments made to Quad.

### FACTUAL ALLEGATIONS[FN5]

Troll was a publisher and direct marketer of books and educational products for use by pupils in grades Pre-K through 9. Troll distributed its products through multiple channels, including school book clubs, home continuity programs, a school library catalog, and retailers.

*The June 30, 2001 financial statements.*

As of June 30, 2001, according to the consolidated financial statement prepared on a "going concern basis" by Ernst & Young for Troll, Troll had a working capital deficit of approximately $16 million

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and a members' deficiency of approximately $55 million.[FN6]In addition, Troll's existing revolver credit agreement with Fleet Capital Corporation ("Fleet") was to expire on March 31, 2002. Under this agreement, Fleet provided Troll with a revolving credit line of up to $19,500,000 through October 31, 2001, and $14,500,000 thereafter through maturity. Troll was advised that it would be unable to pay all existing obligations if it did not obtain alternative sources of capital. As Ernst & Young noted in its report of independent auditors, "with these uncertainties, there is 'substantial doubt' about the Company's ability to continue as a going concern."

*The April 2002 Agreement and Merger.*

**\*2** On April 17, 2002, QV, through its subsidiary QV SBIC, acquired a 90% interest in Troll. This acquisition was made through a merger and plan agreement dated March 22, 2002. Through this agreement, the owners of 100% of the membership interests in Troll Communications, LLC ("Communications") sold their membership interests to Troll Holdings, Inc. ("Holdings"); thus, the shareholders of Holdings acquired 100% of Communications' membership interests.

Holdings formed Troll NewCo, LLC ("NewCo"), a Delaware limited liability company, for the purpose of holding Communications' equity, which in turn held the equity in the Troll Subsidiaries.[FN7]NewCo merged with and into Communications, such that all existing membership interests in Communications were canceled, leaving NewCo and Holdings as the 100% surviving members of Communications. As part of this transaction, Holdings issued stock to QVP SBIC and to the former owners of Communications, Willis Stein & Partners II, L.P. and Willis Stein & Partners, Dutch, L.P. (collectively, "Willis Stein"). Consequently, QVP SBIC then owned approximately 90% of Holdings' issued and outstanding shares, and Willis Stein then owned the remaining 10% of Holdings' issued and outstanding shares.[FN8]

In exchange for the 90% interest in Troll, QVP SBIC paid approximately $4.4 million, including transaction costs and the consideration paid to Willis Stein. The Trustee estimates that, even adjusting for the cancellation of debt [FN9] by the previous owners, Communications' net asset value was negative $12.7 million when it was purchased by Holdings.

As part of the April 2002 transaction, QV entered into a management consulting agreement with Holdings to pay QV for prior consulting work in connection with Quad's acquisition of Troll and to provide consulting and other advice to Troll on an ongoing basis.

Moreover, on April 17, 2002, Communications and PNC Bank, N.A., ("PNC") entered into a revolving credit and security facility, secured by Troll's inventory and accounts receivable, whereby PNC made available a $15 million line of credit to Communications, which was to expire on April 17, 2005.

*The June 30, 2002 financial statements.*

According to Troll's internal financial statements dated June 30, 2002, Communications' accounts payable and other liabilities were $13.8 million. The tangible net worth of Communications was valued at negative $13.1 million. In the notes included in the consolidated financial statements dated June 30, 2002, prepared by PricewaterhouseCoopers ("PwC"), PwC indicated that Troll was in default on its credit facility with PNC because Troll violated the tangible net worth covenant in the credit agreement. In the same consolidated financial statements, PwC determined that there was "substantial doubt about Troll's ability to continue as a going concern."

Accordingly, the Trustee alleges that as of June 30, 2002, Troll was insolvent and remained insolvent through the time it filed its bankruptcy petition.

*Additional loans and contributions to equity by Quad and LLR.*

**\*3** In the period between June 30, 2002, and August 20, 2002, Quad loaned approximately $5.4 million to Troll, evidenced by seven subordinated notes, convertible at the option of Quad, to fund Troll's operations. On August 20, 2002, approximately $1.5 million of Quad's debt was converted into equity in exchange for 27,000 Class A common stock in Holdings.

On September 9, 2002, pursuant to a note and warrant purchase agreement between Troll and Quad,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Troll issued a new subordinated note of $4 million and stock warrants valued at $10,000 to Quad. In exchange, Quad canceled the outstanding subordinated notes of $3.9 million.

On September 23, 2002, pursuant to a securities purchase agreement, Troll issued equity (141,151 shares of Class D common stock in Holdings) to LLR Partners ("LLR") in exchange for payment (equity financing) of $7.5 million. This gave LLR a minority ownership position in Troll. Defendants, and Lehr and Perricelli were added to Holdings' board of directors as a result of this transaction.[FN10]

Also on September 23, 2002, Troll entered into an amended and restated management consulting agreement with Quad, and a separate management consulting agreement with LLR. The Trustee alleges that the cash proceeds from the equity transaction with LLR were used to pay QVP for the following (I) the $4 million subordinated note, plus interest in the amount of $22,591.27, and (ii) management consulting fees in the amount of $154,662. On February 26, 2003, Troll transferred another $134,694.04 to QVP for reimbursement of expenses.

As of September 30, 2002, Troll's EBITDA (i.e., earnings before interest, taxes, depreciation and amortization) was a negative $2.6 million. As of December 31, 2002, Troll's EBITDA was a negative $4.4 million.

On January 23, 2003, LLR and Quad entered into a mezzanine credit agreement to provide Troll with $4 million of additional capital. Quad provided half of the initial $2 million advance to Troll. However, on January 31, 2003, Troll's reported losses for the month were $1.5 million on sales of $3.7 million. Also, another $1.5 million in negative EBITDA was generated.

On February 12, 2003, Troll and Scholastic, Inc. entered into a sales contract for the purchase of substantially all of Troll's assets.

In March of 2003, Troll retained Phoenix Management Services ("Phoenix") to review its operations and advise on the overall financial condition of Troll. On April 3, 2003, Phoenix delivered a cash forecast report indicating that (a) a dramatic scaling [back] was required for survival; (b)

trade vendors were unpaid and stressed; (c) a continued cash burn existed; (d) excessive inventory levels existed; (e) corporate management needed crisis management and restructuring support; and (f) corporate restructuring probably needed to be done inside a chapter 11.

On May 16, 2003, Troll filed its voluntary petition under chapter 11 of the Bankruptcy Code.

## LEGAL STANDARD FOR A MOTION TO DISMISS

**\*4** Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b), governs a motion to dismiss for failing to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."*Paul v. Intel Corp. (In re Intel Corp. Microprocessor Anti-Trust Litig.),* 496 F.Supp.2d 404, 407 (D.Del.2007) citing *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."*Bell Atlantic Corp. v. Twombly,* ---U.S. ----, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007) quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984)(emphasis in original).

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the plaintiff. *Worldcom, Inc. v. Graphnet, Inc.,* 343 F.3d 651, 653 (3d Cir.2003).Fed.R.Civ.P. 8(a)(2), made applicable by Fed.R.Bankr.P. 7008, requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Twombly,* 127 S.Ct. at 1964 quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A complaint need not contain detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief

--- B.R. ----                                                          Page 6
--- B.R. ----, 2008 WL 901173 (Bkrtcy.D.Del.)
**(Cite as: --- B.R. ----, 2008 WL 901173)**

above the speculative level."*Twombly*, 127 S.Ct. at 1964-65.

The relevant record under consideration consists of the complaint and any "document integral or explicitly relied on in the complaint ."*U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir.2002), citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997). When considering a motion to dismiss, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."*Commonwealth of Pa., ex rel. Zimmerman v PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988), citing *Car Carriers*, 745 F.2d at 1107. The movant carries the burden of demonstrating that dismissal is appropriate. *Intel Corp.*, 496 F.Supp.2d at 408.

### DISCUSSION

#### 1. Count One-Breach of Fiduciary Duties

All three of the pending Motions to Dismiss contend that Count One of the Amended Complaint fails to state a claim against the Individual Defendants for breach of fiduciary duties. The breach of fiduciary duties claims are asserted on two grounds. First, the Trustee attacks the Individual Defendants' decision to use the proceeds of the September 23, 2002, LLR equity buy-in to pay debts owed to Quad.[FN11]Second, the Trustee argues that the Individual Defendants failed to take reasonable actions to prevent the "ever-deepening insolvency of the Troll entities."(*See* Plaintiff's Combined Answering Brief, docket no. 62, at 19).[FN12]

**\*5** The Defendants move to dismiss Count One of the Amended Complaint, arguing, *inter alia,* that the business judgement rule protects the Individual Defendants from claims for breach of fiduciary duty, and that Delaware does not recognize a cause of action based upon "deepening insolvency."[FN13]The Trustee argues that the allegations in the Amended Complaint are sufficient to rebut the presumption afforded by the business judgment rule, thereby shifting to the Defendants the burden of proving the entire fairness of the transaction at issue. The Trustee also argues that "deepening insolvency" is a valid cause of action that would be recognized by the Delaware state courts.

*(a) The Directors' Breach of the Duty of Loyalty arising from the Payments to Quad.*

The Individual Defendants argue that claims, such as those asserted in Count One, which question the board of directors' decision-making process are protected by the business judgment rule. The business judgment rule has been described in Delaware case law as follows:

> The rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."Therefore, the judgment of a properly functioning board will not be second-guessed and "absent an abuse of discretion, that judgment will be respected by the courts."Because a board is presumed to have acted properly, "the burden is on the party challenging the decision to establish facts rebutting the presumption."

*Orman v. Cullman*, 794 A.2d 5, 19-20 (Del.Ch.2002) (citations omitted). The United States District Court for the District of Delaware likewise recognized the import of the business judgment rule: "in the absence of facts showing self-dealing or improper motive, a corporate officer or director is not legally responsible to the corporation for losses that may be suffered as a result of a decision that an officer made or that directors authorized in good faith."*Continuing Creditors' Committee of Star Telecomm., Inc. v. Edgecomb*, 385 F.Supp.2d 449, 458 (D.Del.2004) quoting *Gagliardi v. Tri-Foods Intern., Inc.*, 683 A.2d 1049, 1051 (Del.Ch.1996). The *Star Telecomm* Court observed that well-known public policy reasons underlying the rule are (I) to prevent courts from "injecting themselves into a management role for which they were neither trained nor competent" and (ii) to "encourage others to assume entrepreneurial and risk-taking activities by protecting them against personal liability when they have performed in good faith and with due care, however unfortunate the consequence."*Star Telecomm.*, 385 F.Supp.2d at 458 quoting Duesenberg, *The Business Judgment Rule and Shareholder Derivative Suits: A View from Inside*, 60 Wash.U.L.Qu. 311, 314 (1982).

[1][2][3] To survive a motion to dismiss under Rule 12(b)(6), the Trustee must "plead around the business

--- B.R. ----                                                                    Page 7
--- B.R. ----, 2008 WL 901173 (Bkrtcy.D.Del.)
**(Cite as: --- B.R. ----, 2008 WL 901173)**

judgment rule."*Stanziale v. Nachtomi (In re Tower Air, Inc.),* 416 F.3d 229, 238 (3d Cir.2005).[FN14] A plaintiff can rebut the presumption of the business judgment rule by showing that "the board of directors, in reaching its challenged decision, violated any one of its triad of fiduciary duties: due care, loyalty, or good faith."*Emerald Partners v. Berlin,* 787 A.2d 85, 91 (Del.2001).

*6[4][5] In challenging the payments to Quad, the Trustee alleges that the Individual Defendants breached their duty of loyalty. "The duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."*Star Telecomm.,* 385 F.Supp.2d at 460 quoting *Cede & Co. v. Technicolor,* 634 A.2d 345, 361 (Del.1993)."To show that a director is interested, it is usually necessary to show that the director was on both sides of a transaction or received a benefit not received by the shareholders."*Id.,* citing *Orman,* 794 A.2d at 23.

In the Amended Complaint, the Trustee alleges that Frank, Kaplan and Neuwirth were members of the board of directors for Holdings, the board of managers for Communications, and partners of Quad who had "complete control over and directed the policies and affairs of Troll."(Amended Complaint, ¶¶ 5, 6, 7, and 57). The Trustee further alleges that Bergen, another member of Holdings' board of directors and Communications' board of managers, was hired by Frank, Kaplan and Neuwirth, was beholden to their interests, and lacked independence. (Amended Complaint, ¶ 59). With respect to the payments to Quad, the Trustee alleges:

> Defendants Frank, Kaplan, Neuwirth and Bergen breached their fiduciary duty of loyalty to Communication's [sic] creditors by authorizing the distribution of the proceeds of LLR's equity buy-in to QVP ostensibly to pay off a subordinated promissory note as well as sums due to QVP under a consulting agreement with Holdings. The controlling directors, Frank, Kaplan and Neuwirth, were on both sides of this transaction and therefore must prove that the use of these funds to pay off subordinated insider debt was entirely fair to Communication's [sic] unsecured creditors. Bergen was beholden to Frank, Kaplan and Neuwirth and

failed to undertake an independent and good faith review of the merits of using the cash influx to pay off this insider debt at a time when Troll was unable to earn enough money from its sales to fund current operations.

(Amended Complaint, ¶ 61). The facts as pled by the Trustee allege that a majority of the board of director members (Frank, Kaplan and Neuwirth) had a financial interests on both sides of the transaction between Troll and Quad.[FN15] He has also alleged that the remaining board member (Bergen) was not independent. With these allegations, the Trustee has pled facts sufficient to question the disinterestedness of a majority of the board of directors. Therefore, the business judgment rule presumption may not be used as a basis to dismiss Count One under Rule 12(b)(6). The Motions to Dismiss will be denied, in part, to the extent the Motions seek to dismiss that portion of Count One relating to the directors' breach of the duty of loyalty for transferring monies to Quad.

**(b)** *The Officers' Breach of Fiduciary Duties arising from the Payments to Quad.*

*7[6] Defendants Lucking, Thompson and Tuttle argue that the Amended Complaint fails to state a claim against them because (1) officers of the Debtor do not owe any fiduciary duty to creditors; and (2) even assuming, *arguendo,* that the officers owed fiduciary duties to the creditors, the Amended Complaint does not allege that they have breached any fiduciary duties.

Other courts have recognized that, under Delaware law, officers and directors owe a fiduciary duty to creditors once a corporation becomes insolvent. *The Off'l Comm of Unsecured Creditors of High Strength Steel, Inc. v. Lozinski (In re High Strength Steel, Inc.),* 269 B.R. 560, 569 (Bankr.D.Del.2001) citing *LaSalle Nat'l Bank v. Perelman,* 82 F.Supp.2d 279, 290 (D.Del.2000).*See also Tower Air,* 416 F.3d at 238, n. 12 quoting *Arnold v. Soc'y for Savings Bancorp., Inc.,* 678 A.2d 533, 539 (Del.1996)(noting that directors and officers should be treated as comparable fiduciaries). The Amended Complaint alleges:

> Bergen, Lucking, Thompson and Tuttle were officers of Communications during the Relevant Insolvency Period and were likewise beholden to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Frank, Kaplan and Neuwirth and therefore lacked independence in managing the affairs of the debtors. During each officer's respective tenure, he aided and abetted Frank, Kaplan, Neuwirth, Lehr and Perricelli in the conduct complained of herein by executing corporate policy that he knew, or should have known, was detrimental to the interests of the debtors' creditors.

(Amended Complaint, ¶ 60). Viewing the Amended Complaint in the light most favorable to the Trustee, this paragraph alleges that the officers violated their duty of loyalty because the officers were beholden to Frank, Kaplan, and Neuwirth and allowed those interests to take precedence over the best interests of the corporation, its shareholders, and (because of the insolvency) its creditors.

[7] Moreover, to state a claim against the officers for aiding and abetting the other Defendants' breach of fiduciary duties, the Trustee must show: (I) the existence of a fiduciary relationship; (2) a breach of that relationship; and (3) knowing participation by the defendant in the fiduciary's breach. *IT Litigation Trust v. D'Aniello (IT Group, Inc.),* 2005 WL 3050611, * 13 (D.Del. Nov.15, 2005) citing *Crescent/Mach I Partners, L.P. v. Turner,* 846 A.2d 963, 989 (Del.Ch.2000). As discussed above, the Amended Complaint adequately states a claim that the directors (Frank, Kaplan, and Neuwirth, who were also alleged partners in Quad) breached their duties of loyalty by authorizing certain payments to Quad, and the Amended Complaint can be read to allege that some officers knowingly participated in the payments. The Amended Complaint's allegations regarding the officers are vague and lack sufficient detail about which officers, if any, knowingly participated in the payments to Quad. The Motions to Dismiss will be granted, in part, to the extent the officers request dismissal of Count One against Lucking, Thompson and Tuttle for breaching a fiduciary duty, or aiding and abetting in the breach of fiduciary duty, in connection to the payments to Quad. The Trustee shall be granted leave to amend the Amended Complaint to specify which officers breached, or aided and abetted in a breach, of the duty of loyalty by participating in making the challenged payments to Quad.

*8[8] Bergen, however, must be treated separately. The Amended Complaint alleges that he participated

in the board of directors' authorization of the distribution to Quad. (Amended Complaint, ¶ 61). This is sufficient to support of claim of "knowing participation" in the other directors' breach of the duty of loyalty regarding the challenged transfer. This portion of Count One will not be dismissed against Bergen.

(c) *Deepening Insolvency*

[9] The Amended Complaint does not explicitly assert a separate cause of action for "deepening insolvency." However, the Trustee's second theory in Count One is, in substance, a claim of deepening insolvency. The Amended Complaint alleges that the defendants "further breached their fiduciary duties to the creditors of Communication by failing to take prompt corrective action in the face of Communication's rapidly declining financial situation."(Amended Complaint, ¶ 63).[FN16] The Trustee also alleges that "[b]y failing to take such prompt actions, the defendants caused the corporate life of the debtors to be artificially extended beyond the point of economic viability."(*Id.,* ¶ 64). According to the Amended Complaint, the Defendants' failure to act caused the Debtors' trade debt to increase by at least $5 million, which is alleged to be "real and direct damage to Communications' creditors."(*Id.*)

In 2007, after the filing of the Amended Complaint (and after argument on the Motions to Dismiss), the Delaware Supreme Court affirmed, without opinion, a lengthy 2006 decision by the Delaware Chancery Court, extinguishing-with verve-any notion that deepening insolvency is a valid cause of action under Delaware law.[FN17]*Trenwick Am. Litig. Trust v. Billett,* 931 A.2d 438 (Del.2007)*aff'gTrenwick Am. Litig. Trust v. Ernst & Young, LLP,* 906 A.2d 168, 204-07 (Del.Ch.2006).*See also Off'l Comm. of Unsecured Creditors v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.),* 353 B.R. 820, 842 (Bankr.D.Del.2006) (recognizing rejection of "deepening insolvency" as a cause of action under Delaware law). The Chancery Court wrote:

Delaware law imposes no absolute obligation on the board of a company that is unable to pay its bills to cease operations and to liquidate. Even when the company is insolvent, the board may pursue, in good faith, strategies to maximize the

--- B.R. ----
--- B.R. ----, 2008 WL 901173 (Bkrtcy.D.Del.)
**(Cite as: --- B.R. ----, 2008 WL 901173)**

Page 9

values of the firm.... If the board of an insolvent corporation, acting with due diligence and good faith, pursues a business strategy that it believes will increase the corporation's value, but that also involves the incurrence of additional debt, it does not become a guarantor of that strategy's success. That the strategy results in continued insolvency and an even more insolvent entity does not in itself give rise to a cause of action. Rather, in such a scenario, the directors are protected by the business judgment rule. To conclude otherwise would fundamentally transform Delaware law.

*9 *Trenwick, 906 A.2d at 204-05.* The Chancery Court noted that rejecting deepening insolvency as a cause of action "does not absolve directors of insolvent corporations of responsibility," because a plaintiff retains the ability to bring an action for breach of fiduciary duty or fraud. *Id., at 205.*

In *Seitz v. Detweiler, Hershev and Assoc. P.C. (In re CITX Corp ., Inc.),* the Third Circuit Court of Appeals rejected the use of deepening insolvency as a theory of damages, writing:

"[t]he deepening of a firm's insolvency is not an independent form of corporate damage. Where an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, without reference to to the incidental impact upon the solvency calculation."

*CITX, 448 F.3d 672, 678 (3d Cir.2006)* quoting Sabin Willett, *The Shallows of Deepening Insolvency, 60 Bus. Law. 549, 575 (2005).*

[10] Because deepening insolvency has been rejected as a valid cause of action or a theory of damages under Delaware law, the Motions to Dismiss Count One will be granted in relation to the request for relief based upon the theory of deepening insolvency.[FN18]

**2. Count Two and Three-Avoidance of Fraudulent and Preferential Transfers.**

In Count Two, the Trustee seeks to avoid and recover three specific transfers made from Troll to QVP: (I) a transfer in the amount of $4,022,591.27 made on

September 24, 2002 in repayment of an outstanding subordinated promissory note; (ii) a transfer in the amount of $154,662.00, also made on September 24, 2002, as payment of consulting fees; and (iii) a transfer in the amount of $134,694.04 made on February 26, 2003 as payment for reimbursement of QVP's expenses. The Trustee challenges these transfers as fraudulent conveyances pursuant to § 544 of the Bankruptcy Code and § 1305(b) of the Delaware Code.[FN19]

In Count Three, the Trustee seeks to avoid and recover the same three transfers to QVP, but under that theory that the transfers are avoidable as preference payments under § 547 of the Bankruptcy Code because the payments were made to an insider one year prior to filing the bankruptcy petition. *See* 11 U.S.C. § 547(b).[FN20]

In the Frank Motion to Dismiss, the Quad Defendants move to dismiss Counts Two and Three by arguing that the Trustee has not alleged sufficient facts regarding Troll's insolvency at the time of the transfers. Moreover, QVP moves to dismiss Count Two for failure to plead the fraud claim with the specificity required by Fed.R.Civ.P. 9(b).[FN21]

(a) *Insolvency.*

[11] To state a fraudulent transfer claim under Delaware Code § 1305(b) and a preferential transfer claim under Bankruptcy Code § 547(b), the Trustee must allege that the Debtors were insolvent at the time of the transfers. The Quad Defendants argue that the Trustee's allegations of insolvency are inadequate because the allegations (I) rely on selective pieces of financial data that are either misstated or misleading, (ii) are contradicted by the information set forth in the financial statements referred to in the Amended Complaint, and (iii) are refuted by other allegations in the Amended Complaint relating to equity investments made at the time of the transfers.[FN22] According to the Quad Defendants, the facts contained within the Amended Complaint amount to only a "mere suspicion" of insolvency, which the Quad Defendants claim is insufficient to sustain the causes of action in Counts Two and Three. In response, the Trustee contends that he has alleged insolvency sufficiently, and resists the level of pleading burden that the Defendants seek to impose upon him.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*10** An entity is insolvent when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation...." 11 U.S.C. § 101(32)(A). The Amended Complaint contains a number of factual allegations reflective of insolvency. For example, the Trustee supports the general allegation that Troll was insolvent beginning June 2002 (prior to the September 2002 transfers), and continuing through the bankruptcy filing, with specific fact allegations:

> According to Troll's internal financial statements, as of June 30, 2002, Communications' accounts payable and other liabilities were \$12.8 million. The tangible net worth of Communications was valued at a negative \$13.1 million. The going concern business qualification given by PWC rendered the company's goodwill valueless, making tangible net worth the guidepost for determining the company's insolvency. By this standard, and by the standard of the company's cash flow, Troll was insolvent on June 30, 2002.... Troll was never able to climb out of its insolvency right through the time it filed its bankruptcy petition. Additional funds were provided by its shareholders, but those funds could only be used to cover some of the company's losses, they were not sufficient to make the company solvent.

(Amended Complaint, ¶ 26). Accepting allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of the Trustee, the financial data contained in the Amended Complaint support the Trustee's allegations that Troll had a negative net worth and was unable to meet maturing obligations. Although the Quad Defendants take issue with these allegations, the Trustee has adequately pled facts supporting allegations of insolvency and will be permitted to proceed with discovery. "To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove them." *Foss Mfg. Co., Inc. v. Foss (In re Felt Mfg. Co., Inc.),* 371 B.R. 589, 637 (Bankr.D.N.H.2007) quoting *Koppel v. 4987 Corp.,* 167 F.3d 125, 133 (2d Cir.1999).*See Off'l Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.),* 326 B.R. 301, 306-07 (Bankr.D.Del.2005)(deciding that allegations that a debtor was undercapitalized from its inception and did not have sufficient assets to at the time of the challenged transfers in order to satisfy obligations adequately alleged insolvency).

**(b)** *Failure to plead fraud with particularity required by* Fed.R.Civ.P. 9(b).

[12] The Quad Defendants also argue that, in connection with the allegations under § 1305(b) of the Delaware Code, the Trustee has not identified a creditor whose claim arose before the transfers were made. QVP contends that without such factual allegations, the Trustee has averred nothing more than the statutory elements, which is insufficient to survive a motion to dismiss. *See OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.),* 325 B.R. 696, 698-99 (Bankr.D.Del.2005) (dismissing fraudulent transfer count when defendant recited only statutory elements without any supporting factual information).

**\*11** The Trustee argues that Count Two is sufficient to satisfy Rule 9(b). The Trustee points out that, in addition to nearly fifty paragraphs of factual allegations describing the circumstances surrounding the transfers that were incorporated by reference into the fraudulent transfer counts, the Amended Complaint identifies the transfers by date and amount, and the basis for the payment. The Amended Complaint also generally alleges that there were unsecured creditors whose claims arose before the challenged transfers. (Amended Complaint, ¶ 71).

[13][14] Here, the Trustee has satisfied his pleading burden under Rule 9(b). Greater liberality is afforded in pleading fraud in the bankruptcy setting because it is often a trustee, a third party outsider to the transaction, who must plead fraud based on secondhand knowledge for the benefit of the estate and its creditors. *In re O.P.M. Leasing Services, Inc.,* 32 B.R. 199, 203 (Bankr.S.D.N.Y., 1983). The Quad Defendants argue that the Trustee should not be allowed relaxed pleading standards because he has been in possession of Troll's books and records for some time. I need not decide whether the Trustee should be permitted greater liberality in pleading fraud, however, because the Amended Complaint provides sufficient factual allegations. In addition to reciting the language contained in the statutes, the Trustee has identified the specific transfers by date and amount, claimed that the transferees were insiders, supplied specific allegations regarding Troll's financial status, argued about the value, or

--- B.R. ----
--- B.R. ----, 2008 WL 901173 (Bkrtcy.D.Del.)
**(Cite as: --- B.R. ----, 2008 WL 901173)**

lack thereof, that was received in the exchange, and identified the applicable state law with respect to the § 544 claim. As for QVP's contention that no specific creditor has been identified, "for the purpose of Rule 12(b)(6), courts do not generally require a trustee to plead the existence of an unsecured creditor by name." *IT Group,* 2005 WL 3050611, *15 quoting *Pardo v. Avanti Corporate Health Sys., Inc. (In re APF Co.),* 274 B.R. 634, 639 (Bankr.D.Del. 2001).

*3. The Trustee's Request to Further Amend the Amended Complaint.*

Finally, Defendants QV and QVP SBIC argue that the Amended Complaint does not assert any causes of action against them and, therefore, fails to state a claim against them. The Trustee concedes this fact, and seeks leave to further amend the Amended Complaint pursuant to Fed.R.Civ.P. 15, made applicable hereto by Fed .R.Bankr.P. 7015, to add QVP SBIC as a defendant in Count One, and QV as a defendant in Counts Two and Three. The Quad Defendants do not object to the addition of QV to Counts Two and Three, but do object to the addition of QVP SBIC to Count One.

The Trustee argues that as the majority shareholder of Holdings and a controlling shareholder of Troll, QVP SBIC owes fiduciary duties to creditors and should be included as a defendant in Count One. The Quad Defendants, however, oppose the Trustee's request to add QVP SBIC as a defendant to Count One, arguing that the Trustee cannot meet the requirements for relation back of the amendment under Rule 15(c). The Trustee's request with respect to QVP SBIC referred to Rule 15, generally, and did not discuss the applicability of the relation back provisions of Rule 15(c). To provide a full opportunity to address these issues, a briefing schedule for further submissions regarding the Trustee's request to amend will be set by the order attached hereto.

**III. CONCLUSION**

**\*12** For the reasons set forth above, the Motions to Dismiss will be treated as follows:

(1) the Bergen Motion to Dismiss will be treated as follows:

(a) the Bergen Motion to Dismiss will be GRANTED, *in toto,* as to defendants Lucking and Thompson, although the Trustee will be given an opportunity to amend the Amended Complaint to include, if he is able, specific allegations regarding Lucking's and Thompson's alleged breach of fiduciary duties with respect to the payments to Quad; and

(b) the Bergen Motion to Dismiss will be GRANTED, in part, as to defendant Bergen with respect to the portion of Count One based upon any claim of deepening insolvency, but DENIED as to the portion of Count One alleging a breach of the duty of loyalty claim arising out of payments to Quad;

(2) the Tuttle Motion to Dismiss will be GRANTED *in toto,* although the Trustee will be given an opportunity to amend the Amended Complaint to include, if he is able, specific allegations regarding Tuttle's alleged breach of fiduciary duties with respect to the payments to Quad;

(3) the Frank Motion to Dismiss will be treated as follows:

(a) the Frank Motion to Dismiss will be GRANTED as to the portion of Count One based upon any claim of deepening insolvency;

(b) the Frank Motion to Dismiss will be DENIED as to the portion of Count One alleging a breach of the duty of loyalty claim arising out of payments to Quad; and

(c) the Frank Motion to Dismiss will be DENIED as to Counts Two and Three;

(4) Count Four is withdrawn by agreement of the Trustee; and

(5) The Trustee's request to amend the Amended Complaint under Fed.R.Civ.P. 7015 will be GRANTED, by agreement, to add QVP as a defendant to Counts Two and Three. A briefing schedule will be set in the Order accompanying this Memorandum to further consider the Trustee's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----
--- B.R. ----, 2008 WL 901173 (Bkrtcy.D.Del.)
(Cite as: --- B.R. ----, 2008 WL 901173)

request to amend the Amended Complaint under Fed.R.Bankr.P. 7015 to add QVP SBIC as a defendant to Count One.

An appropriate order will be entered.

## ORDER

**AND NOW**, this 2nd day of April, 2008, upon consideration of the following motions:

(1) The Motion to Dismiss First Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) filed by Defendants Peter Bergen, Jeffrey Lucking and Curtis Thompson (docket no. 49)(the "Bergen Motion to Dismiss"),

(2) The Motion of Lincoln E. Frank, Andrew E. Kaplan, Daniel Neuwirth, Seth J. Lehr, Scott Perricelli, Quad Venture Partners SBIC, LP, Quad Venture Partners, LP, and Quad Ventures, LLC To Dismiss Amended Complaint (docket no. 53)(the "Frank Motion to Dismiss"), and

(3) Defendant Terry Tuttle's Motion to Dismiss Count I of the First Amended Complaint (docket no. 56)(the "Tuttle Motion to Dismiss"),

and upon consideration of the respective responses and replies thereto, and after oral argument thereon, and for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED** and **DECREED** as follows: [FN]

(1) the Bergen Motion to Dismiss will be treated as follows:

**\*13** (a) the Bergen Motion to Dismiss will be **GRANTED,**in toto, as to defendants Lucking and Thompson, although the Trustee will be given an opportunity to amend the Amended Complaint to include, if he is able, specific allegations regarding Lucking's and Thompson's alleged breach of fiduciary duties with respect to the payments to Quad; and

(b) the Bergen Motion to Dismiss will be **GRANTED**, in part, as to defendant Bergen with respect to the portion of Count One based upon any claim of deepening insolvency, but **DENIED** as to the portion of Count One alleging a breach of the duty of loyalty claim arising out of payments to Quad;

(2) the Tuttle Motion to Dismiss will be **GRANTED**in toto, although the Trustee will be given an opportunity to amend the Amended Complaint to include, if he is able, specific allegations regarding Tuttle's alleged breach of fiduciary duties with respect to the payments to Quad;

(3) the Frank Motion to Dismiss will be treated as follows:

(a) the Frank Motion to Dismiss will be **GRANTED** as to the portion of Count One based upon any claim of deepening insolvency;

(b) the Frank Motion to Dismiss will be **DENIED** as to the portion of Count One alleging a breach of the duty of loyalty claim arising out of payments to Quad; and

(c) the Frank Motion to Dismiss will be **DENIED** as to Counts Two and Three;

(4) Count Four of the Amended Complaint is withdrawn by agreement of the Trustee; and

(5) The Trustee's request to amend the Amended Complaint under Fed.R.Civ.P. 15, made applicable hereto by Fed.R.Bankr.P. 7015, will be **GRANTED**, by agreement, to add QVP as a defendant to Counts Two and Three. The parties may, but are not required to, file supplemental written submissions by **Friday, April 25, 2008**, regarding the Trustee's request to amend the Amended Complaint pursuant to Fed.R.Bankr.P. 7015 to add QVP SBIC as a defendant to Count One (the "Rule 7015 Matter").

A status hearing will be held on **May 6, 2008 at 1:30 p.m.** in Bankruptcy Courtroom No. 5, 824 Market Street, Fifth Floor, Wilmington, Delaware at which time and place the Court will (I) hear oral argument on the Rule 7015 Matter, (ii) set a deadline by which the Trustee must file any amendments to the Amended Complaint; and (iii) address the parties' remaining pre-trial needs.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----
--- B.R. ----, 2008 WL 901173 (Bkrtcy.D.Del.)
**(Cite as: --- B.R. ----, 2008 WL 901173)**

FN1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(F), (H) and (O).

FN2. Pursuant to the Order dated May 20, 2003 (main case docket no. 51), the Court granted the Debtors' request for joint administration of the chapter 11 cases of the following debtors: Troll Communications, LLC; Troll Holdings, Inc.; Troll Associates, LLC; Troll Book Clubs, LLC; Troll Home Clubs, LLC; Troll Book Fairs, LLC; Troll School & Library, LLC; Troll Realty, LLC; and Troll Publishing, LLC (collectively, the "Debtors" or "Troll").

FN3. Count Four, which sought avoidance and recovery of certain allegedly fraudulent transfers pursuant to 6 Del. C. § 1304, and 11 U.S.C. §§ 544, 548, 550, and 551 against QVP, was withdrawn voluntarily by the Trustee in its Combined Answering Brief in Opposition to Defendants' Motions to Dismiss. (docket no. 62, at p. 2).

FN4. The following references will be adopted for the purposes of this Memorandum. The Court will refer to each of the individual defendants, respectively, by his last name in his individual capacity, and collectively as the "Individual Defendants." The Court will refer to the corporate defendants as follows: Quad Ventures Partners SBIC ("QVP SBIC"), Quad Venture Partners LP ("QVP"), and Quad Ventures, LLC ("QV"). The corporate defendants will be referred to collectively as "Quad" or the "Quad Defendants."

FN5. The factual background is derived from the First Amended Complaint and does not constitute findings of fact.

FN6. Many of the allegations in the Trustee's Amended Complaint refer broadly to "Troll" without specifying a particular debtor entity. If a particular entity was noted in the Amended Complaint, that particular entity is also noted here.

FN7. The Troll Subsidiaries include Troll Associates, LLC; Troll Book Clubs, LLC; Troll Home Clubs, LLC; Troll Book Fairs, LLC; Troll School & Library LLC; Troll Realty, LLC; and Troll Publishing, LLC (the "Troll Subsidiaries").

FN8. The corporate transactions described herein are taken from the Amended Complaint. While the process of the shifting ownership interests and mergers may not be entirely clear, the Trustee's assertion that, at the end of the transactions, the Quad Defendants held a 90% ownership interest in Troll, is sufficient for consideration of the Motions to Dismiss.

FN9. As their part of the planned merger, Willis Stein forgave approximately $38.5 million in subordinated debt. Willis Stein received (a) the 10% interest in Holdings (valued at that time by the parties at $555,556), (b) a new $1 million subordinated note due to be repaid in April, 2007, and (c) $1 million cash.

FN10. In the Amended Complaint, the Trustee alleges that Lehr is a partner of LLR and Perricelli is "associated with" LLR.

FN11. In the Amended Complaint's description of the parties, the Trustee alleges that Frank, Kaplan, and Neuwirth were the partners of Quad.

FN12. Count One of the Amended Complaint is not expressly styled as a claim of "deepening insolvency;" however, it is alleged that the defendants "caused the corporate life of the debtors to be artificially extended beyond the point of economic viability."(Amended Complaint, ¶ 63.)

FN13. Although the record does not reflect an express agreement by the parties that Delaware law applies to the claims in this adversary proceeding, all of the parties cite to Delaware law in support of their respective arguments throughout

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

submissions. In considering the Motions to Dismiss, I will, therefore, apply Delaware law.

FN14. The *Tower Air* Court noted that "Generally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6).... A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face, however ."*Tower Air*, 416 F.3d at 238 (citations omitted).

FN15. Some defendants argue that Trustee has not alleged that a *majority* of the board members lacked independence in connection with the challenged transfers to Quad. In this argument, the defendants allege that there were six members on the board of directors, three of whom (Bergen, Lehr and Perricelli) were not partners of Quad and were not on both sides of the challenged transaction. However, upon viewing the facts in the light most favorable to the Trustee, as is required in deciding a motion to dismiss, the Trustee has alleged that the Lehr and Perricelli were not board members at the time decisions were made regarding payments to Quad. Instead, the Trustee has alleged that three out of four board members had interests on both sides of the challenged transaction, which may defeat the motion to dismiss this part of Count I. Further, even assuming Lehr and Perricelli were board members at the time it was decided that payments should be made, the Trustee alleges that a fourth board member, Bergen, was beholden to Frank, Kaplan, and Neuwirth, thereby questioning the independence of his decision-making. *See Orman*, 794 A.2d at 24.

FN16. The Trustee does not specify which fiduciary duty has been breached in causing the deepening insolvency, and only alleges that a majority of the directors were "not disinterested."

FN17. Said the Vice Chancellor: "I reach a result consistent with a growing body of

federal jurisprudence, which has recognized that those federal courts that became infatuated with the concept, did not look closely enough at the object of their ardor."*Trenwick*, 906 A.2d at 206 [citations contained in n. 105 omitted].

FN18. The dismissal of that part of Count One based upon deepening insolvency leaves standing only the allegations related to the directors' breach of the duty of loyalty arising from the challenged payments to Quad. In the Motions to Dismiss, the directors also argue that Count One should be dismissed based upon the exculpation provision included in the certificate of incorporation of Holdings that protects directors from liability based upon the a breach of the duty of care. See8 Del.C. § 102(b)(7). Because the exculpatory provision does not apply to claims based upon the breach of the duty of loyalty, it does not provide a basis for dismissal of the remaining claims in Count One. *See Production Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d 772, 794-95 (Del.Ch.2004) ("[B]y the statute's own terms, an exculpatory charter provision does not insulate directors from liability for various acts of disloyalty towards the firm.")

FN19.Section 544(b) of the Bankruptcy Code states in pertinent part that the Trustee "may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 502 of this title....11 U.S.C. § 544(b).

Section 1305(b) of the Delaware Code states in pertinent part: "A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent."6 Del.C. § 1305(b).

FN20.Section 547(b) of the Bankruptcy Code provides:

--- B.R. ----                                                  Page 15
--- B.R. ----, 2008 WL 901173 (Bkrtcy.D.Del.)
**(Cite as: --- B.R. ----, 2008 WL 901173)**

(b) Except as provided in subsection (c) and (i) of this section, the Trustee may avoid any transfer of an interest of the debtor in property-

(1) to or for the benefit of a creditor

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if-

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

FN21.Fed.R.Civ.P. 9(b), made applicable hereto by Fed.R.Bankr.P. 7009, provides in part, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

FN22. With respect to the preference claims in Count Three, QVP also argues that the Trustee may not avail himself of the presumption of insolvency set forth in Bankruptcy Code § 547(f) because the

September 24, 2002 transfers were more than ninety days prior to the petition date.

FN1. Capitalized terms not defined in this Order shall have the meaning set forth in the accompanying Memorandum.

Bkrtcy.D.Del.,2008.
In re Troll Communications, LLC
--- B.R. ----, 2008 WL 901173 (Bkrtcy.D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.